In the Matter of NIAGARA MOHAWK POWER CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, June 3, 1976

*Shea, Gould, Climenko, Kramer & Casey (Milton S. Gould* of counsel), *Lauman Martin* and *Herron, Lawler, Fischer & Hughes* for petitioner.

*Peter H. Schiff (Frank S. Robinson* of counsel), for Public Service Commission of the State of New York, respondent.

*Lavigne & Nicandri (Eugene L. Nicandri* of counsel) and *Duncan, Brown, Weinberg & Palmer (Frederick D. Palmer* and *Wallace L. Duncan* of counsel), for Town of Massena, respondent.

HERLIHY, J. On March 13, 1975, the respondent, Town of Massena, filed a petition for a condemnation order in the County Court of St. Lawrence County to acquire the electric transmission facilities of the petitioner located in that town. Pursuant to the provisions of section 5-a of the Condemnation Law (unless otherwise specified, all statutory references are to the Condemnation Law), a copy of the town's petition was served on the Public Service Commission.

Section 5-a was added by chapter 508 of the Laws of 1952 and was amended by chapter 414 of the Laws of 1953 to be applicable to any proceeding to condemn any portion of property subject to the regulations of the Public Service Commission. It directs the commission to hold a hearing and to certify to the St. Lawrence County Court: "(1) the annual earnings which might reasonably be anticipated by the present owner thereof pursuant to just and reasonable rates, with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies; and (2) the rate base and the rate of return from which its estimate of earnings is derived." Section 5-a also provides for review of the certification pursuant to CPLR article 78.

The Legislature in its findings determined that prior to the adoption of section 5-a condemnation awards for the acquisi-

tion of utility properties were excessive.[1] The language used by the Legislature suggests that the commission's certification is to serve only as a guideline to the court and the commissioners of appraisal. The Legislature was not mandating the basis of valuation to be followed, but wanted to direct the attention of the court and commissioners of appraisal to the desirability of a certain approach. Section 14 directs the commissioners of appraisal to show due regard to the certification by the Public Service Commission in section 5-a condemnation cases but does not mandate that the commissioners accept the certification as the basis in fixing the amount of compensation to be paid to the owners of the property.

The Public Service Commission held the required hearing and issued a lengthy opinion wherein it considered the various issues raised by the parties to the proceedings. In its opinion it noted that the parties had adopted positions in the proceedings whereby they had included percentages of the plant located *outside* the town but that it did not feel that there was any basis for a "constructive" condemnation of the plant not physically to be taken over by the town. Under such circumstances, the commission found that since the issue of a "constructive" condemnation was not for its resolution, its function as a fact finder would be served by certifying a rate base limited solely to the facilities located in the town and to be directly condemned and also a rate base applicable to all of those items located outside the town which might be considered as "constructive" condemnation or consequential damage. The rate bases were respectively $1,787,546 and $5,382,539. The rate of return was a constant 9.2% and thus the earnings for each rate base were respectively $164,454 and $495,194.

The petitioner contends (A) that the certification does not comply with the specifications of section 5-a because (1) only one rate base may be certified; (2) the certification of only

---

1. "It is therefore intended to protect the interest of the public in the property of public utility companies and the persons now or hereafter receiving service from utility companies from a recurrence of such excessive awards and, without attempting to mandate the basis of valuation to be followed, to direct the attention of the courts and commissioners of appraisal to the general desirability of the result derived by capitalizing the income which the private company could be expected to earn while subject to regulation as a public utility from rates fixed with due regard among other things to a reasonable average return upon capital actually expended, as last ordered, authorized or otherwise determined by the public service commission in connection with companies subject to a regulation" (L 1952, ch 508, § 1, as amd by L 1952, ch 515, § 1).

facilities located in the town does not properly reflect the rate base of an operating unit; (3) the certification does not set forth the facts which constitute the rate base; (4) the reference by the commission to an exhibit in the record does not provide the necessary support for the rate base; (5) the commission should have accepted certain facts as offered by petitioner; (6) there is no substantial evidence to support the rate base or rate bases; (7) the rate of return of 9.2% is too low; (8) petitioner's expenses incurred in resisting the appropriation should have been included in the rate base; (9) as a matter of law, the commission should have certified only a rate base including diminished value of facilities outside the town and not directly to be appropriated; and (B) that section 5-a is unconstitutional because (1) it is vague and unclear; (2) it violates the rule that just compensation must be determined by the courts and not by the Legislature; and (3) it establishes a standard whereby capitalization of anticipated earnings is the basis for damages or compensation.

Insofar as the above contentions of the petitioner relate to factual issues and the fact-finding power of the board, the record contains substantial evidence to support the findings of the Public Service Commission and its decision incorporates such parts of the record as are essential to its findings.

In the case of *Onondaga County Water Auth. v New York Water Serv. Corp.* (285 App Div 655) the Appellate Division of the Fourth Department considered the effect of the then recently enacted section 5-a and also related amendments to sections 14, 15 and 18. As noted by the court in its decision, the intent was to require the commission to act in an advisory capacity and the certification is an aid to commissioners of appraisal and the courts. *(Onondaga County Water Auth. v New York Water Serv. Corp., supra,* p 660.) The alternative certification in the present case is in harmony with the intent of the Legislature and is not prohibited by section 5-a. (See n 1, *supra.)* The court specifically noted that the inclusion of the Public Service Commission in the process of condemning utilities did not impair the powers of the courts and appraisers to determine just compensation and did not usurp the constitutional powers of duly authorized tribunals. *(Onondaga County Water Auth. v New York Water Serv. Corp., supra,* pp 660, 661.)

In the present case the petitioner has not demonstrated any constitutional defect. As held in the *Onondaga* case, the

judgment of the Public Service Commission is not being substituted for that of appraisers and the courts. Furthermore, the intention is clearly only that the figures certified by the commission be a yardstick to measure the justness of the award and not as the measure which either must or should be applied in any particular case. The proof offered before the commissioners of appraisal may materially alter the amounts certified by the commission, but at this juncture of the proceedings that is a matter of proof yet to be presented to and determined by the commissioners of appraisal. It should be emphasized that in the present proceeding this court is neither passing upon the weight or admissibility of any matter which might be presented to the commissioners of appraisal as proof of value nor upon the theory of damages which should be employed by the said commissioners in arriving at an award of just compensation.

Section 5-a is neither vague nor unclear in its standards and particularly as to an operating unit or system. The record demonstrates that the commission has no problem in defining the operating unit presently being appropriated.

The town has cross-petitioned for review and first contends that the commission erred by including construction work in progress in the rate base. It is readily apparent, however, that the final appropriation will to some extent include work presently in progress and, accordingly, there is a factual basis for its inclusion in the rate base. The additional contention that the commission erred in adopting the particular allocation formula for the systemwide rate base is without any substantial merit. The record contains evidence of the allocation factors used and it does not appear that there is any lack of record support.

The last contention of the town is that the commission erred in using a year-end rate base. However, this gives the latest available base and is appropriate in view of the mandate of section 5-a that the earnings be those reasonably to be anticipated. The method adopted by the commission shows the most recent determination of capital actually expended and is not without a rational basis for the commission's determination.

The determination should be confirmed, and the petition and cross petition dismissed, without costs.

KOREMAN, P. J., GREENBLOTT, MAIN and REYNOLDS, JJ., concur.

Determination confirmed, and petition and cross petition dismissed, without costs.