OPINION OF THE COURT
 

 Jasen, J.
 

 The statutory right to a safe workplace may not be enforced by means of a remedy at law which would require the judiciary to preempt the exercise of discretion by the executive branch of government.
 

 In 1982, the Long Island Correctional Facility (LICF), situated on the grounds of the Pilgrim State Psychiatric Center, was opened as part of a plan to meet the immediate and long-term needs of the State correction system. The decision partially to convert the Pilgrim State Psychiatric Center to a medium security correctional facility was made by former Governor Carey, and was met with early opposition. (See
 
 Cohalan v Carey,
 
 88 AD2d 77, app dsmd 57 NY2d 672.) In January 1984, in his annual message to the Legislature, Governor Cuomo announced that the LICF would be closed as a part of the over-all capital expansion plan of the New York State Department of Correctional Services (DOCS). In a subsequent press release, the Governor stated that the LICF would be closed on October 1, 1984, in view of the availability of 3,500 new prison spaces over the next year under the State’s prison expansion program and an analysis of prison population growth projections.
 

 Thereupon, petitioners commenced this article 78 proceeding, seeking to enjoin the scheduled closing of the LICF. The proceeding was brought on behalf of two classes of correctional personnel: correction officers, sergeants, lieutenants and civilian employees of DOCS currently employed at LICF (Class I); and, individuals employed in similar capacities at the Sing Sing Correctional Facility and other facilities maintained and operated by DOCS (Class II). The gravamen of this proceeding is that
 
 *238
 
 the closing of the LICE would exacerbate the risk of serious bodily injury and death to persons employed at prison facilities, in violation of their statutory right to a safe workplace pursuant to section 27-a of the Labor Law.
 
 [1]
 

 Two motions were submitted to Special Term: petitioners’ motion for a preliminary injunction and respondents’ motion to dismiss the petition. Special Term granted petitioners’ motion for a preliminary injunction on June 5,1984, thus enjoining the scheduled closing of the LICE pending a determination on the merits. Respondents moved to dismiss the petition pursuant to CPLR 7804 (subd [f]) and CPLR 3211 (subd [a], pars 2, 7) upon the ground,
 
 inter alia,
 
 that the decision to close the LICE involves the exercise of executive discretion and therefore presents a nonjusticiable controversy. By order dated July 9, 1984, Special Term denied respondents’ motion to dismiss, finding that the claim advanced by petitioners under section 27-a of the Labor Law was justiciable by reason of this court’s recent decisions in
 
 Klostermann v Cuomo
 
 and
 
 Joanne S. v Carey
 
 (61 NY2d 525). Upon motion by respondents, the Appellate Division, Second Department, granted permission to appeal. In a decision dated September 21, 1984, the Appellate Division reversed both orders of Special Term, on the law, and entered an order dismissing the petition and vacating the preliminary injunction. We affirm for the following reasons.
 

 The doctrine of justiciability, developed to identify appropriate occasions for the exercise of judicial authority, represents perhaps the most significant and least comprehended limitation upon the judicial power. (See Jackson, The Supreme Court in the American System of Government, p 11.) Justiciability is the generic term of art which encompasses discrete, subsidiary concepts including,
 
 inter alia,
 
 political questions, ripeness and advisory opinions. At the heart of the justification for the doctrine of justiciability lies the jurisprudential canon that the power of the judicial branch may only be exercised in a manner consistent with the “judicial function”
 
 (Matter of State Ind. Comm.,
 
 224 NY 13, 16 [Cardozo, J.]), upon the proper presentation of matters of a “Judiciary Nature” (2 Farrand, Records of Federal Convention of 1787 [1911], p 430). Recognizing that we have no more right to usurp the authority conferred upon a
 
 *239
 
 coordinate branch of government than to decline the exercise of jurisdiction which is granted, we turn to the critical inquiry presented by this appeal — whether petitioners’ claims are justiciable.
 

 As a reflection of the pattern of government adopted by the State of New York, which includes by implication the separation of the executive, legislative andjudicial powers
 
 (Matter of LaGuardia v Smith,
 
 288 NY 1, 5-6;
 
 Matter of Guden,
 
 171 NY 529, 531), it is a fundamental principle of the organic law that each department of government should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches
 
 (People ex rel. Burby v Howland,
 
 155 NY 270, 282). With respect to the distribution of powers within our system of government, it has been said that no concept has been “more universally received and cherished as a vital principle of freedom”.
 
 (Dash v Van Kleeck,
 
 7 Johns 477, 509 [Kent, Ch. J.].) Within our tripartite governmental framework, the Governor, as chief executive officer, has the responsibility to manage the operations of the divisions of the executive branch, including the Department of Correctional Services.
 
 (Saxton v Carey,
 
 44 NY2d 545, 549.) The lawful acts of executive branch officials, performed in satisfaction of responsibilities conferred by law, involve questions of judgment, allocation of resources and ordering of priorities, which are generally not subject to judicial review.
 
 (Matter of Lorie C.,
 
 49 NY2d 161,171;
 
 Matter of Abrams v New York City Tr. Auth.,
 
 39 NY2d 990, 992;
 
 Jones v Beame,
 
 45 NY2d 402, 408;
 
 James v Board of Educ.,
 
 42 NY2d 357, 368;
 
 Matter of Smiley,
 
 36 NY2d 433,441.) This judicial deference to a coordinate, coequal branch of government includes one issue of justiciability generally denominated as the “political question” doctrine.
 
 (Jones u Beame,
 
 45 NY2d 402, 408,
 
 supra; Benson Realty Corp. v Beame,
 
 50 NY2d 994, 996, app dsmd 449 US 1119;
 
 Klostermann v Cuomo,
 
 61 NY2d 525, 535,
 
 supra.)
 

 By seeking to vindicate their legally protected interest in a safe workplace, petitioners call for a remedy which would embroil the judiciary in the management and operation of the State correction system. The primary responsibility for administering the system is vested in the Commissioner of Correctional Services (Correction Law, § 112), who is appointed by and holds office at the pleasure of the Governor. The responsibility for maintaining, establishing and closing any correctional facility operated by DOCS is expressly conferred upon the Commissioner of Correctional Services. (Correction Law, § 70, subd 3, par [a].) While it is within the power of the judiciary to declare
 
 *240
 
 the vested rights of a specifically protected class of individuals, in a fashion recognized by statute
 
 (Klostermann v Cuomo,
 
 61 NY2d 525,
 
 supra),
 
 the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the political branches of government
 
 (Klostermann v Cuomo,
 
 61 NY2d 525,
 
 supra; Matter of Abrams v New York City Tr. Auth.,
 
 39 NY2d 990, 992,
 
 supra).
 
 Where, as here, policy matters have demonstrably and textually been committed to a coordinate, political branch of government, any consideration of such matters by a branch or body other than that in which the power expressly is reposed would, absent extraordinary or emergency circumstances
 
 (James v Board of Educ.,
 
 42 NY2d 357, 367,
 
 supra),
 
 constitute an
 
 ultra vires
 
 act.
 

 Even if the relief sought by petitioners were not rendered nonjusticiable by reason of the controversy being a political question, consideration of the matter would, nevertheless, be barred by the doctrine of ripeness. On the facts presented, and in absence of the tender of evidence indicating the intended destination of the current inmate population of the LICE, it cannot be said that a realistic danger confronts the petitioners of either Class I or Class II. Under petitioners’ theory of the case, Class I, the current employees of the LICE, could only be exposed to an increased hazard if transferred to the same facilities to which the current inmates are to be sent. There has been no showing that the destinations of petitioners of Class I will parallel those of the current inmate population of the LICE. The risk to petitioners of Class II is similarly conditional. Class II would not be subjected to an increased risk of hazard if the process of attrition as applied to the LICE proved effective, if the creation of new prison spaces as the result of the over-all capital expansion plan was achieved, or if an adequate number of vacancies occurred at DOCS facilities other than the LICE. The claims set forth by petitioners are only supportable upon a theory of contingent justiciability — a standard which is contrary to the requirement of the Labor Law that a condition or practice may be enjoined only where “a danger
 
 exists
 
 which could reasonably be expected to cause death or serious physical harm
 
 immediately
 
 or before the
 
 imminence
 
 of such danger can be eliminated through the abatement procedures otherwise provided for” (Labor Law, §27-a, subd 7 [emphasis added]). Where the harm sought to be enjoined is contingent upon events which may not come to pass, the claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract.
 
 [2]
 
 (See New
 
 York Public Interest Research Group v Carey,
 
 42 NY2d 527.)
 

 
 *241
 
 We do not, by our decision today, suggest that petitioners’ claims seeking safe working conditions are strictly beyond the realm of judicial consideration. On the contrary, section 27-a (subd 7, par c) of the Labor Law establishes automatic standing for petitioners to enjoin working conditions which are hazardous, or present an imminent danger, in those instances where the Industrial Commissioner fails to seek relief upon notice of such condition. This remedy is essential to the protection of the basic right of all employees to work in an environment that is as free from hazards and risks to their safety as practicable. (Legislative Findings, L 1980, ch 729, § 1.) To warrant judicial intervention, the threat to petitioners’ legally protected interest in a safe workplace must be of sufficient immediacy and reality, and the remedy sought must not seek judicial action which would necessarily impinge upon the prerogative and authority of a coordinate branch of government. Under the circumstances of this case, the Appellate Division correctly dismissed the petition and vacated the preliminary injunction.* *
 
 [3]
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
 

 Order affirmed, with costs.
 

 [2]
 

 . Holding, as we do, that consideration of the matter is barred by the doctrine of ripeness, any further consideration would require this court, to
 
 *241
 
 render an advisory opinion, a practice not in accord with the settled policy in this State.
 

 [3]
 

 . Since nonjusticiability, whether by reason of political question or non-ripeness, implicates the subject matter jurisdiction of the court, respondents properly predicated their motion to dismiss upon CPLR 3211 (subd [a], par 2). (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3001:4.) CPLR 3211 (subd [a], par 2) is the proper vehicle to dismiss a nonripe controversy, even though the conceptual focus of the ripeness doctrine is upon the maturity of the claim asserted.
 
 (See Duke City Lbr. Co. v Butz,
 
 539 F2d 220, 221, n 2, cert den 429 US 1039.)