Titone, J.
(dissenting). The issue before us is not whether Executive Law § 23 (1) confers ultimate responsibility for the promulgation of a disaster preparedness plan upon the executive branch or the legislative branch of county government, for the challenged executive order does not purport to promulgate such a plan. It simply directs the Commissioner of Police and the Commissioner of Planning to study a proposed plan that is not in effect and may never go into effect. The real question, then, concerns the proper role of the judiciary in this emotionally charged dispute. Because the County Executive clearly possesses express and implied authority to issue the executive order in question and the alleged illegal acts sought to be enjoined have not taken place and are contingent upon future events that may or may not come to pass, the purported challenge is “nonjusticiable as wholly speculative and abstract” (Matter of New York State Inspection, Security & Law Enforcement Employees v Cuomo, 64 NY2d 233, 240).* Accordingly, the order of the Appellate Division should be reversed and the petitions dismissed.
This litigation revolves around a nuclear power plant located at Shoreham on Long Island. It appears that the plant cannot become operational in the absence of an emergency evacuation plan. The Suffolk County Legislature has consistently taken the position that no plan would be feasible and eventually passed a *871 resolution, signed by the present County Executive, appellant Peter Cohalan, which “terminated” Suffolk County’s “radiological emergency planning process” and directed that “no local radiological emergency plan * * * be adopted or implemented”.
Blocked by local governmental obstinance, the utility submitted its own plan to the Nuclear Regulatory Commission. After the Commission rejected the plan as beyond the utility’s legal powers, appellant Cohalan issued Executive Order 1-1985, which reads as follows:
“By the power vested in me under Article II-B of the New York State Executive Law and § 302 of the SUFFOLK COUNTY CHARTER, I hereby determine that it is necessary for me to cause to be reviewed and evaluated the Local Emergency Response Plan for Suffolk County presently before the United States Nuclear Regulatory Commission and the Federal Emergency Management Agency.
“I therefore direct the Commissioner of Police and Commissioner of the Suffolk County Planning Department to use whatever resources of the government of the County of Suffolk are necessary in order to complete a review and evaluation of the above Local Emergency Response Plan and carry out and cause to be conducted a test and exercise of the above said Plan in conjunction with the Local Emergency Response Organization (LERO). I further direct that agents of the County of Suffolk assume the function of command and control with implementation of police powers of the County of Suffolk over the conduct of said test and exercise.”
Charging that Cohalan betrayed them, petitioners, several individual Suffolk County legislators and four Suffolk County towns, brought separate suits to annul the executive order on the ground that it usurps the power of the Suffolk County Legislature to develop and implement a disaster preparedness plan. They have been successful at Special Term and at the Appellate Division, obtaining a judgment, which the Appellate Division affirmed, declaring the executive order void and enjoining Cohalan, his agents and employees from taking any action “to enforce, implement or carry out the directives, policies, or terms” of the order “or any directive or instruction relating thereto.” We conclude that the determinations below rest upon a speculative premise concerning future events and, therefore, would reverse.
There can be no doubt that the Suffolk County Executive has the power — indeed the responsibility — to review the utility’s proposal. Executive Law § 20 (1) (b) expressly declares State *872 policy to be that “local chief executives take an active and personal role in the development and implementation of disaster preparedness programs and be vested with authority and responsibility in order to insure the success of such programs”. In “preparing such plans,” the State Legislature has specified that “cooperation, advice and assistance” be sought from “local government officials, regional and local planning agencies, [and] police agencies” (Executive Law § 23 [5]). That is all Executive Order 1-1985 does.
Under the Suffolk County Charter, the county executive is chief administrative officer and administrative head (Suffolk County Charter § 302), and, as such, is obligated “to manage the operations of the divisions of the executive branch” (Matter of New York State Inspection, Security & Law Enforcement Employees v Cuomo, 64 NY2d 233, 239, supra). In addition to other responsibilities, the charter directs the county executive to “present to the county legislature from time to time such information and recommendations concerning the affairs of the county as he may deem necessary or as the county legislature may by resolution request” (Suffolk County Charter § 303 [g]).
Although County Executive Cohalan has acted within the parameters of these statutory and charter provisions, the argument is made that since the Suffolk County Legislature has consistently expressed its intention not to approve any plan, the courts should now hold that, as a matter of statutory construction, the power to promulgate and implement a disaster preparedness plan is solely a legislative function, and, inasmuch as the Suffolk County Legislature will not do so, the County Executive’s powers are vitiated. This begs the question.
County Executive Cohalan has not promulgated any plan. His executive order merely directs that a proposal be evaluated. After the proposal is studied, he may well conclude that it is not viable and that will end the matter. If, on the other hand, he concludes that the proposal is workable and should be implemented, he could submit it to the Suffolk County Legislature for its consideration and agree to abide by its determination. Again, the question of statutory construction would be moot. Only if County Executive Cohalan implements the proposal by executive fiat in the face of legislative disapproval will the issue pressed upon us be ripe for judicial resolution. By no stretch of logistic legerdemain can it be read as some sort of first step toward a grandiose scheme to impose the plan on the county.
There are other “ifs” here as well. We are told that it is absolutely certain that the Suffolk County Legislature will *873 withhold its consent. But the only thing absolutely certain in political matters is that nothing is absolutely certain. Attitudes are shaped by current events. Another energy crisis, with its long gasoline lines and brownouts, may cause a quick change in legislative consensus. The legislators could, at least theoretically, be swayed by expert reports, especially if, by virtue of some sort of Federal preemption, it is determined that the plant is to open (cf. British Airways Bd. v Port Auth., 564 F2d 1002 [local noise limitation standard utilized to bar SST invalidated]). A resolution, by definition, is “an act of a temporary character not prescribing a permanent rule of government” (Matter of Collins v City of Schenectady, 256 App Div 389, 392; emphasis supplied), which “continues for a reasonable period only, and in such a case a formal repeal is not, of course, required to terminate its operation (5 McQuillin, Municipal Corporations [3d ed], § 15.42)” (Quaglia v Incorporated Vil. of Munsey Park, 54 AD2d 434,439, affd 44 NY2d 772). Indeed, this litigation itself, fueled by the adoption of a more flexible posture by the County Executive, is itself telling. In short, we are reminded of Byron’s Julia, who “whispering, ‘I shall ne’er consent,’ consented” (Don Juan, Canto I, stanza 117).
All these “ifs” render it both unnecessary and improper for us to express any view on whether a disaster preparedness plan may be put into effect absent the imprimatur of the local legislature. Courts should not involve themselves in challenges to executive acts where “the harm sought to be enjoined is contingent upon events which may not come to pass [because] the claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract” (Matter of New York State Inspection, Security & Law Enforcement Employees v Cuomo, 64 NY2d 233, 240, supra). To paraphrase our holding in New York Public Interest Research Group v Carey (42 NY2d 527, 531), until the County Executive attempts to implement a plan in the teeth of legislative opposition, any declaration on our part “ ‘would be premature’ ” (quoting Borchard, Declaratory Judgments, at 63; see also, Connor v Siebert, 56 NY2d 674). “Jurisdiction exists that rights may be maintained. Rights are not maintained that jurisdiction may exist” (Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 274).
An actual antagonistic assertion of rights which are ripe for adjudication is an indispensable safeguard, essential to the integrity of the judicial process (see, Self-Insurer’s Assn. v State Indus. Commn., 224 NY 13 [Cardozo, J.]). “This is not merely a question of judicial prudence or restraint; it is a constitutional *874 command defining the proper role of the courts under a common-law system” (New York Public Interest Research Group v Carey, 42 NY2d 527, 529-530, supra).
The Suffolk County Legislature’s pertinacity cannot, in any sense, interdict the County Executive from undertaking his obligation to “take an active and personal role in the development and implementation of disaster preparedness programs” (Executive Law § 20 [1] [b]). When the study is completed, the county legislature must at least “listen” to his report, even if it does not like what it “hears” (see, Suffolk County Charter § 303 [g]). The Suffolk County Legislature’s resolutions on the subject constitute but temporary, ministerial declarations, not legislation finally and unequivocally disapproving the proposed plan (see, City of Troy Unit of Rensselaer County Ch. of Civ. Serv. Employees Assn. v City of Troy, 36 AD2d 145,147, ajffd, 30 NY2d 549; Quaglia v Incorporated Vil. of Munsey Park, supra; Matter of Collins v City of Schenectady, supra; cf. Matter of Jewett v Luau-Nyack Corp., 31 NY2d 298, 305-306).
Perhaps the Suffolk County Legislature can curb the County Executive’s ability to function in this area through the power of the purse, by refusing to allocate sufficient funds for the project. But even that question is not before us. At this stage, the County Executive is plainly within his powers, and the “lawful acts of executive branch officials, performed in satisfaction of responsibilities conferred by law, involve questions of judgment, allocation of resources and ordering of priorities, which are generally not subject to judicial review. * * * This judicial deference to a coordinate, coequal branch of government includes one issue of justiciability generally denominated as the ‘political question’ doctrine” (Matter of New York State Inspection, Security & Law Enforcement Employees v Cuomo, 64 NY2d 233, 239, supra).
Acceptance of the Suffolk County Legislature’s argument here would establish a farreaching and mischievous precedent that cannot be confined to litigation involving a power plant in Suffolk County. It would abrogate the separation of powers doctrine at the local level, and, in its place, substitute a parliamentary system (see, People v Tremaine, 281 NY 1), because it would enable the legislative branch to turn a power of consent or confirmation into a power of appointment. To strip the executive of his power to designate a police commissioner, for example, the legislature need only pass a resolution to the effect that it will not confirm anyone other than “X” and if the executive attempted to seek or interview other applicants, the legislators need only call upon the judiciary to enjoin him from acting in *875 contravention of its resolution. Through this artifice, the executive would be compelled to nominate “X”, the legislature’s “nominee” (see, Suffolk County Charter § 1202 [a]; cf. Matter of County of Suffolk, 43 NY2d 968, revg 56 AD2d 301).
The United States Supreme Court recently rebuffed similar attempts by Congress to straight] acket the President through the use of the legislative veto (Immigration & Naturalization Serv. v Chadha, 462 US 919). In Chadha, the court invalidated Immigration and Nationality Act § 244 (c) (2) (8 USC § 1254 [c] [2]) which authorized either House of Congress, by resolution, to overturn the decision of the executive branch, pursuant to authority delegated by Congress to the Attorney General, to allow a particular deportable alien to remain in this country. It reasoned that this legislative veto provision violated integral parts of the constitutional design for the separation of powers. As so well put, “The hydraulic pressure inherent within each of the separate Branches [of Government] to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted” (Immigration & Naturalization Serv. v Chadha, supra, p 951). There is no reason why this court should hold otherwise.
We would prefer not to express our thoughts on what the 1978 State Legislature thought on a question that they possibly never thought about. By applying established rules of nonjusticiability, we give time for the political process to operate. Having identified a gap in the legislation, it would be best to allow the State Legislature to fill it (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 193 [b]).
To find, as does the majority, that Executive Order 1-1985 constitutes an impermissible “first step” in implementing the plan, is, in actuality, an inquiry into the County Executive’s state of mind. It is.basic law, however, that the courts have no power to investigate the motives of the executive branch, absent a demonstration of fraud or the like (see, 2 McQuillin, Municipal Corporations §§ 10.35, 10.36,10.37 [3d ed rev]). On this record, petitioners have not overcome the presumption that the executive has acted with the sole purpose of accomplishing permissible constitutional and statutory goals (see, 2 McQuillin, Municipal Corporations § 10.35 [3d ed rev]).
For these reasons, the order of the Appellate Division should be reversed and the petitions dismissed.
*876 Chief Judge Wachtler and Judges Simons, Kaye and Alexander concur; Judge Titone dissents and votes to reverse in an opinion in which Judges Jasen and Meyer concur.
Order affirmed, without costs, in a memorandum.

 Although the parties have not urged nonjusticiability, since the issue implicates subject matter jurisdiction (Matter of New York State Inspection, Security & Law Enforcement Employees v Cuomo, 64 NY2d 233, 241, n 3), we raise the issue on our own motion (Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324; Siegel, NY Prac § 8).