OPINION OF THE COURT
Edwin Kassoff, J.
In this proceeding brought pursuant to General City Law § 20 (2), the City of New York (City) seeks an order providing that the compensation to be made to the "condemnee”, Jamaica Water Supply Company (Jamaica Water), be ascertained and determined by this court solely by the income capitalization method of valuation based on the actual net income as allowed by the Public Service Commission. In addition, the City seeks to have this court determine the value of the property of Jamaica Water that the City proposes to acquire. This court concludes that the instant proceeding must be dismissed as it does not present a justiciable question.
"Although much has been written on justiciability, its meaning and application remain uncertain” (Jones v Beame, 45 NY2d 402, 408 [citations omitted]). It is clear, however, that the Court of Appeals has considered as nonjusticiable, that is, inappropriate or improper for judicial inquiry or adjudication, political questions, issues that have become moot or academic, disputes in which only an advisory opinion is sought, disputes that are not ripe for consideration, and disputes which are contingent upon the happening of a future event which may not come to pass (see, Cuomo v Long Is. Light. Co., 71 NY2d 349; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518; Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233, 240; Jones v Beame, supra, at 408). The rationale behind the judiciary declining to entertain these types of disputes is that the judiciary should abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far better suited to the task; and " 'to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems’ ” (Church of St. Paul & St. Andrew v Barwick, supra, at 518, quoting 4 Davis, Administrative Law § 25:1, at 350 [2d ed]; see, Jones v Beame, supra, at 408, 409; see generally, Krent, Separating the Strands in Separation of Powers Controversies, 74 Va L Rev 1253 [1988]). The instant petition presents a dispute which is not justiciable *380 in that it calls for an advisory opinion, presents a question which is not ripe, and presents a question which is contingent.
In August of 1986, the following provisions of General City Law § 20 (2) became effective: "Notwithstanding any general, special or local law to the contrary, the city of New York is hereby required to acquire by condemnation, and to maintain and operate, all or part of the plants, properties, mains, pipes, facilities, easements, franchises and other real or personal property of the Jamaica Water Supply Company constituting or related to the water distribution system located in the city of New York, notwithstanding the fact that such property or part thereof was or is devoted to a public use. Notwithstanding any general, special or local law to the contrary, title to the property condemned under the preceding sentence shall vest in the city of New York and compensation shall be paid only (a) upon a decision by the supreme court that compensation for the property so condemned shall be determined solely by the income capitalization method of valuation, based on the actual net income as allowed by the public service commission, and (b) upon such court’s determination of the amount of such compensation, based upon the income capitalization method, entry of the final judgment, the filing of the final decree, and the conclusion of any appeal or expiration of the time to file an appeal related to the condemnation proceeding. Should any court determine that a method of compensation other than the income capitalization method be utilized, or if the proposed award is more than the rate base of the assets taken in condemnation as utilized by the public service commission in setting rates and as certified by the public service commission, the city of New York may withdraw the condemnation proceeding without prejudice or costs to any party.”
Although Jamaica Water has property in both Queens County and Nassau County, the above-quoted portion of General City Law § 20 (2) directs the City to acquire only those assets of Jamaica Water located in New York City, i.e., those assets in Queens County. Accordingly, references to the property of Jamaica Water in this decision shall refer to that property located in Queens County.
The City proceeded to hold a public hearing in July of 1987, pursuant to EDPL article 2, concerning the proposed acquisition of the property of Jamaica Water. The City then made its determination and findings, a synopsis of which was published in two newspapers. In March of 1988, the Deputy Mayor, by *381 certificate, directed the Corporation Counsel to commence a condemnation proceeding to acquire Jamaica Water pursuant to the terms and conditions of General City Law § 20 (2). In April 1988 the City filed a notice of pendency with the County Clerk of Queens County, and served the instant notice of application to condemn and petition.
The notice of application to condemn and the petition seek an order providing that the compensation to be made to the "condemnee” of the property to be acquired be ascertained and determined by this court solely by the income capitalization method of valuation, based on the actual net income as allowed by the Public Service Commission in accordance with section 20 (2) of the General City Law, as well as other relief. Jamaica Water answered the City’s petition and denied that the income capitalization method of valuation was the only method of valuation which could be considered by this court. The answer opposed the City’s request that this court determine in advance, prior to any valuation trial, that compensation would be made solely by the income capitalization method of valuation based on the actual net income as allowed by the Public Service Commission. The answer sought to have this court deny the City’s other requests for relief as premature, but did not oppose that branch of the petition which sought to allow Jamaica Water a set time period in which to file a written claim. The answer also sought to have this court direct that a valuation trial be held pursuant to EDPL 511.
On the return date of the petition, the attorneys entered into a stipulation on the record whereby they agreed that this court could not determine the appropriate method of valuation or the amount of compensation to be paid prior to this court listening to the evidence concerning valuation. Those branches of the petition which sought postjudgment relief were denied without prejudice to renew after the conclusion of the trial, and Jamaica Water was granted an opportunity to submit a written claim. The parties also entered into a stipulation regarding various pretrial matters including the submission of pretrial memoranda, the exchange of appraisals, the premarking of exhibits, and the exchange of lists of witnesses. At the conclusion of the trial conducted by this court, the parties submitted posttrial memoranda and proposed findings of fact and conclusions of law. This court then requested that the City and Jamaica Water address whether the relevant portion of General City Law § 20 (2) was constitu *382 tional, and whether that statute impermissibly called for this court to issue an advisory opinion. The parties submitted a joint letter to this court which contends that the statute is constitutional and that it does not call for an advisory opinion.
The parties’ briefs and their findings of fact and conclusions of law take the view that the relief sought in this proceeding is to have this court determine the appropriate method of evaluating the property of Jamaica Water that the City proposes to acquire by condemnation, and to fix a value for that property. The City argues that the appropriate method of valuation is the income capitalization method and that the value of the property is $62,500,000. Jamaica Water contends that the appropriate method of valuation is reproduction cost new less depreciation plus the market value of the real estate and that the value of the property is $923,966,341.
The initial question faced by this court is: What exactly is the nature of the relief sought by the City in this proceeding, and can such relief be obtained in a judicial proceeding? Although the parties assert in their joint letter that this proceeding is a valuation trial pursuant to EDPL article 5, upon examining that statute it is clear that the instant proceeding does not fall within the ambit of that statute. In pertinent part, section 501 (B) of that law provides that the Supreme Court will have exclusive jurisdiction to "hear and determine all claims arising from the acquisition of real property” other than as provided in subdivision (A), which provides that the Court of Claims will have jurisdiction over claims arising from the acquisition of real property by the State of New York. EDPL 103 (A) defines "Acquisition” as "the act of vesting of title, right or interest to, real property for a public use, benefit or purpose, by virtue of the condemnor’s exercise of the power of eminent domain.”
The second sentence of the relevant portion of General City Law § 20 (2) provides that the title to the property condemned shall vest in the City and compensation shall be paid only if two conditions are met: (1) that there be a Supreme Court decision that compensation shall be determined solely by the income capitalization method of valuation based on the actual net income as allowed by the Public Service Commission, and (2) entry of a final judgment, the filing of the final decree and the conclusion of any appeals or the expiration of the time to file an appeal relative to the "condemnation proceeding”. Thus, pursuant to section 20 (2) title does not vest in the City until there has been a court decision holding that compensa *383 tian shall be determined solely by the income capitalization method based on the actual net income as allowed by the Public Service Commission and the appeal process regarding that court decision has been exhausted. As title will not vest in the City until, at the earliest, 30 days after the date of entry of the judgment embodying this court’s decision regarding valuation (see, CPLR 5513), at this point in time title has not vested in the City pursuant to the terms of General City Law § 20 (2).
The Third Department in Matter of Saratoga Water Serv. v Saratoga County Water Auth. (190 AD2d 40) interpreted almost identical language contained in Public Authorities Law § 1199-eee (5), and held that such language did not unconstitutionally dictate that the income capitalization method of valuation must be used by the court in determining just compensation, and that if the court employed a method of valuation different than the income capitalization method, title would vest in the condemnor when the appeal process regarding that decision expired, unless the condemnor withdrew the condemnation proceeding pursuant to the provisions of the statute. But even applying the Third Department’s analysis here, title to the property of Jamaica Water has not yet vested in the City since title cannot vest until after the appeal process has ended concerning the decision determining the method of valuation and fixing the value of the property.
As there has been no taking of the property of Jamaica Water pursuant to the terms of the statute, or pursuant to the Third Department analysis, and there is no claim in this proceeding that there has been a de facto taking of any of the property of Jamaica Water by the City, there has been no "acquisition” within the meaning of EDPL and this court does not have jurisdiction over this proceeding pursuant to article 5 of that law. Nor can this proceeding be considered a condemnation proceeding in any traditional sense since this proceeding seeks to have this court make certain determinations regarding the valuation of the property of Jamaica Water prior to any taking of any property and prior to any judicial determination that the City is entitled to acquire any property of Jamaica Water.
Even though the instant proceeding is not a valuation trial pursuant to EDPL article 5, or a valuation trial in the traditional sense, it is possible that this court has jurisdiction over the proceeding on some other basis. If the petition sets forth a cognizable cause of action for cognizable relief, this *384 court may ignore the form of the proceeding and make whatever order is required for its proper prosecution since there is no dispute that jurisdiction has been obtained over the parties (see, CPLR 103).
The relief sought by the City in its petition appears, at first blush, to be akin to that sought in a declaratory judgment action. The petition seeks a decision from this court setting forth or determining the method of valuation that this court deems appropriate for valuing the property of Jamaica Water the City proposes to acquire and also seeks a determination of the value of that property. In other words, the petition seeks a declaration of the method of valuation this court finds appropriate for valuing the property of Jamaica Water and a declaration of the value of that property. The findings of fact and conclusions of law submitted by the parties seek such declarations by this court, and the language of General City Law § 20 (2) envisions a court decision making such declarations as the second sentence of the relevant portion of section 20 (2) states that title vests in the City and compensation will be paid only after there is a "decision by the supreme court that compensation for the property so condemned shall be determined solely by the income capitalization method of valuation”, and "upon [that] court’s determination of the amount of such compensation”, the entry of the final judgment and the expiration of the appeal process regarding that decision.
Thus, the language of the statute and the relief sought by the petition contemplate, at the outset of the condemnation proceeding, before there has been any taking of any property, a decision by the Supreme Court declaring what method of valuation the court will use to value the property the City proposes to acquire and fixing the value of that property. That is, a trial to fix the method of valuation and the amount of damages is to take place in advance of any taking or any judicial determination that Jamaica Water is entitled to any damages.
CPLR 3001 provides "[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.” "The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jurai relation *385 either as to present or prospective obligations” (James v Alderton Dock Yards, 256 NY 298, 305 [citations omitted]).
However, the relief sought by the petition and as directed by the Legislature — a declaration of the method of valuation and a declaration of the value of the property the City proposes to acquire — is not cognizable pursuant to CPLR 3001. That section provides that the court may declare or determine the "rights and other legal relations of the parties”. The relief sought here does not concern the legal rights, obligations, or relations of the parties. Rather, the petition seeks a determination of the applicable method of valuing the property to be taken by the City when title vests, and the estimated value of that property, wholly factual matters.
While there is no doubt that a court has the power to determine factual matters when necessary or incidental to the declaration of legal relations (see, Borchard, Declaratory Judgments, at 396 [2d ed 1941]), here the parties do not seek to have this court declare or determine any disputed legal relations, rather they seek to have this court resolve a purely factual dispute concerning the value of Jamaica Water’s property. This is not a situation where the parties are in doubt as to their legal rights and wish to avoid the hazard of taking action in advance of the determination of such rights, or where the legal consequences of some contemplated action is uncertain (cf., Matter of Storar, 52 NY2d 363; Bunis v Conway, 17 AD2d 207). There is no question that the City has the right to condemn the property of Jamaica Water, indeed General City Law § 20 (2) specifically directs the City to acquire by condemnation the property of Jamaica Water. Nor is there any dispute that Jamaica Water is entitled to just compensation for any property actually taken by the City.
Here the parties vigorously dispute what method of valuation is appropriate for valuing the property the City may take at some future date, and dispute what amount of money that property is presently worth. These disputes do not involve the legal or jurai rights of the parties, but are concerned with the hypothetical determination of the amount of damages Jamaica Water would be entitled to if title to the property vests in the City on some future date. Such a determination is purely factual and involves only the financial relationship of the parties. As the relief sought in the present proceeding does not involve the legal rights or legal relationship of the parties, or the legal consequences of any contemplated action by the *386 parties, it does not present a cognizable claim for declaratory judgment relief pursuant to CPLR 3001.
Although the relief sought in the instant proceeding is not cognizable under EDPL or pursuant to CPLR 3001, and this court cannot discern any other basis or authority for granting the type of relief sought in this proceeding independent of General City Law § 20 (2), that statute clearly provides a basis for the relief sought. Section 20 (2) envisions that the first step to be taken by the City in condemning the property of Jamaica Water is to seek a decision from the Supreme Court determining or declaring the method of valuation the court will utilize to value the property the City proposes to take, and fixing the estimated monetary value of that property. This is exactly the relief sought by the City in the instant proceeding. However, such a judicial decision regarding valuation only, rendered prior to any taking, would be advisory, and insofar as the Legislature has directed this court to make such a decision through General City Law §20 (2), that statute is unconstitutional.
The relevant propositions regarding advisory opinions are well stated by Judge Cardozo in Matter of Self-Insurer’s Assn. v State Indus. Commn. (224 NY 13, 16-17): "The function of the courts is to determine controversies between litigants * * * They do not give advisory opinions. The giving of such opinions is not the exercise of the judicial function * * * In the United States no such duty attaches to the judicial office in the absence of express provision of the Constitution * * * In this state the legislature is without power to charge the courts with the performance of non-judicial duties” (citations omitted). This limitation on the judiciary "is not merely a question of judicial prudence or restraint; it is a constitutional command defining the proper role of the courts under a common-law system” (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 529-530).
Judges "are not adjuncts or advisers, much less investigating instrumentalities, of other agencies of government. Their pronouncements are not subject to review by Governor or Legislature * * * They speak 'the rule or sentence’ ” (Matter of Richardson, 247 NY 401, 411 [citations omitted]). Although the exigencies of government have made it necessary to relax a merely doctrinaire adherence to the principle of separation of powers, "[elasticity has not meant that what is of the essence of the judicial function may be destroyed by turning *387 the power to decide into a pallid opportunity to consult and recommend” (supra, at 410 [citation omitted]).
In Matter of State Indus. Commn. (supra), the Commission certified a question to the Appellate Division regarding the Commission’s power to require certain payments from insurance companies and self-insurers. After the Appellate Division answered the question in the affirmative, an appeal was taken to the Court of Appeals. That Court dismissed the appeal finding that there was no judicial proceeding before the Court, but only a request for advice which could be accepted or rejected by the Commission. The Court of Appeals found that the Commission sought to "fortify [itself] in advance by judicial instruction” (at 16), and held that the judiciary could not render such an opinion as it would be purely advisory. Similarly, here the City seeks to fortify itself in advance of any taking by a judicial decision determining the method of valuation the court will utilize, and fixing the amount the City will have to pay in damages should it take the property in question. Such a decision, however, would be merely advisory.
It is apparent to this court that in enacting General City Law §20 (2) the Legislature has attempted to do indirectly what it cannot do directly (see, Forster v Scott, 136 NY 577, 584). It is well settled that the determination of just compensation is a judicial function, and that the Legislature cannot set a maximum figure on the amount of compensation that will be paid, or even say what the rule of compensation shall be (see, Monongahela Nav. Co. v United States, 148 US 312, 327; Matter of Keystone Assocs. v Moerdler, 19 NY2d 78, 89; Matter of City of New York [Fifth Ave. Coach Lines], 18 NY2d 212, 218). Realizing that it could not dictate the method of valuation, or set a maximum figure on the amount of compensation to be awarded once the property had been taken by the City or the City was legally committed to acquire the property, the Legislature, through section 20 (2), directs the Supreme Court to first determine the method of valuation and the amount of the compensation in the abstract, at the outset of the proceeding, in advance of any taking or any judicial determination that the City is entitled to acquire the property. Section 20 (2) then gives the City the option of withdrawing the proceeding if the method of valuation selected by the Court is different than that specified in section 20 (2) or if the amount of compensation fixed by the court is greater than the amount calculated using the formula set forth in section 20 (2). The statute envisions that at the time of the court’s *388 valuation decision the City would not have taken any of the property of Jamaica Water or be legally committed to acquire that property, and therefore, the City would be free to withdraw the proceeding without any implication. However, as this statutory scheme is premised upon the court initially issuing a decision regarding valuation prior to any taking of any property or any legal commitment by the City to acquire the property, and prior to Jamaica Water suffering any actual damages, the statute unconstitutionally directs the court to render an advisory opinion.
General City Law § 20 (2) attempts to charge the court with the function of rendering an opinion as to the appropriate method of valuation and the calculation of the value of the property the City proposes to acquire. That is, the statute attempts to direct the Court to act only as an appraiser of damages. The computation of damages by the court is not ancillary to the resolution of any legal question or dispute, but is the sole function of the court. The statute further directs that the opinion is to be rendered as the initial judicial determination in the proceeding to condemn, prior to any taking by the City, or even any judicial determination that the City is entitled to acquire the property. In essence, the Legislature directs that the court is to advise the City regarding the appropriate method of valuation and to estimate the value of the property the City proposes to acquire, before the City makes any legal commitment to acquire the property. However, the Legislature is without power to direct the court to render such a decision, as it is advisory.
The parties’ contention in their joint letter that General City Law § 20 (2) does not direct this court to issue an advisory opinion because the Legislature has enacted four statutes with similar provisions, is clearly without merit since each of the four statutes may unconstitutionally direct a court to render an advisory opinion. The parties also contend that the decision of the Third Department in Matter of Saratoga Water Serv. v Saratoga County Water Auth. (190 AD2d 40, supra) indicates that the relevant provisions of General City Law § 20 (2) are constitutional. Although that decision rejected the arguments that the provisions contained in Public Authorities Law § 1199-eee (5) (which are, in relevant part, almost identical to those contained in General City Law § 20 [2]), were unconstitutional in that they impermissibly dictated the method of valuation to be utilized in valuing the property, and unconstitutionally vague because they failed to establish *389 when a taking occurs so that valuation could be decided, that decision did not address the issue whether the provisions direct the court to render an advisory opinion. Indeed, a review of the appellant’s brief in Matter of Saratoga Water Serv. v Saratoga County Water Auth. (supra) reveals that no argument was made that the statute called for an advisory opinion, and that issue was not before the Third Department.
It should be noted that the instant case and the Matter of Saratoga Water Serv. v Saratoga County Water Auth. (supra) case are procedurally very different. In Matter of Saratoga Water Serv. v Saratoga County Water Auth. (supra), after the respondent had issued its determination and findings and they were published, the petitioner commenced a proceeding pursuant to EDPL 207 seeking judicial review by the Appellate Division of the respondent’s determination and findings. Here, no such objection was made to the City’s determination and findings, and the City then commenced the instant proceeding to have this court determine the method of valuation and the value of the property the City proposes to take. Thus, the instant parties are one step further along than those in Matter of Saratoga Water Serv. v Saratoga County Water Auth. (supra), and the condemnor there has not yet sought a court decision with respect to valuation that the City seeks in the instant proceeding.
Further, the parties appear to argue that the relevant provisions of General City Law § 20 (2) do not call for an advisory opinion because they are similar to the condemnation scheme set forth in the former Condemnation Law. However, there are significant differences between the condemnation scheme set forth in the former Condemnation Law and the condemnation process set forth in General City Law § 20 (2).
Under the former Condemnation Law the plaintiff condemnor first sought from the court a judgment that the plaintiff was entitled to take and hold such property for the public use specified in the petition (Condemnation Law §4). After a trial of any issues raised by the petition and answer, the court was to render a judgment (Condemnation Law §§ 11, 13). If the plaintiff condemnor was successful and the court ruled in its favor, the court was required to issue a judgment adjudging that the condemnation of the property described was necessary for the public use, that the plaintiff was entitled to take and hold the property for the public use specified upon making compensation therefor, and directing the appointment of three commissioners (Condemnation Law § 13). The commis *390 sioners were to ascertain and determine the compensation which ought justly to be made by the plaintiff to the owners of the property and render a report to the court (Condemnation Law §§ 13, 14).
Once the report of the commissioners was filed with the court any party could move to confirm or set aside the report (Condemnation Law § 15). If the report was set aside, the court would direct a rehearing either before the same commissioners or before different commissioners (Condemnation Law § 15). Upon the confirmation of the report, the court would enter a final order in the proceeding directing that compensation would be made to the owners of the property pursuant to the determination of the commissioners and that upon the payment of such compensation the plaintiff would be entitled to enter into possession of the property condemned and take and hold it for the public use specified in the judgment (Condemnation Law § 15). Upon entry of the final order, the amount directed to be paid as compensation to the owners of the property would be docketed as a judgment against the plaintiff, and it could then be enforced as a judgment (Condemnation Law § 17).
Thus, under the former Condemnation Law the initial decision by the court in the proceeding to condemn was a judgment finding that the public use required the condemnation of the property and that the condemnor was entitled, upon paying compensation for the property, to hold such property for the public use specified. Once there was a judicial determination that the public use required the condemnation of the property, compensation would be fixed by the commissioners and upon confirmation of their report, the condemnor would have to pay the amount fixed in the confirmed report. The critical determination was the court’s decision concerning the legal question whether the public use required the condemnation of the property and once that adjudication was made, the calculation of damages flowed from that determination as an ancillary matter, and the condemnor was required to pay the amount of damages fixed by the final order.
This court notes that the present condemnation law, the EDPL, similarly provides that the initial court determination in a condemnation proceeding is an order to acquire such property pursuant to article 4 (EDPL 402). Once such an order is filed together with the acquisition map, the acquisition of the property described in that map is complete, and title to the property described vests in the condemnor (EDPL 402 [B] *391 [5]). Once the property has been acquired, any claims arising from that acquisition, such as the determination of just compensation, would be decided in a valuation trial pursuant to article 5 (EDPL 501).
Pursuant to both the former Condemnation Law and the present EDPL, the initial court decision concerned the legal issue whether the condemnor was entitled to acquire the property for some public use or purpose. Once the condemnor’s authority to acquire the property for some public use was established, the court would consider the secondary matter of valuing that property. Here, there has been no judicial decision establishing that the City is entitled to acquire the property of Jamaica Water, and the City does not seek such a decision in the present proceeding. Rather, in this proceeding, the City seeks an initial decision from this court regarding the appropriate method of valuation and the value of the property the City proposes to acquire. Such a decision, however, would be an advisory opinion. This court notes that General City Law § 20 (2) makes no provision at all for a judicial decision concerning whether the City is authorized or entitled to acquire the property of Jamaica Water.
At this point in time there is no claim that the City has taken any of the property of Jamaica Water, and Jamaica Water has not yet suffered any actual damage. In New York, the right to compensation is measured and fixed when the taking or appropriation is complete (see, Kahlen v State of New York, 223 NY 383, 390; Wolfe v State of New York, 22 NY2d 292, 295). Therefore, as Jamaica Water has yet to suffer any concrete injury or harm, any decision concerning the amount of damages, or the method of computing those damages, would be advisory (see, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233, supra; Matter of Alamit Props. Co. v Planning Bd., 159 AD2d 703; Bachety v Kinsella, 146 AD2d 725).
For example, in Campo v Asbestospray Corp. (158 AD2d 259), the plaintiffs, who had suffered minor injuries but not serious injuries, sought a judicial interpretation of the Statute of Limitations but did not seek any relief for any present injuries. The First Department affirmed the dismissal of the plaintiff’s suit because it sought an advisory opinion. Similarly, here Jamaica Water has yet to suffer any actual damage as none of its property has been taken by the City, nor has there been a judicial decision that the City is entitled to acquire any of its property.
*392 The court’s decision fixing value pursuant to General City Law § 20 (2) could not accurately quantify the full value of the property taken since compensation must be fixed as of the date of appropriation, and title to the property would not vest in the City pursuant to section 20 (2) until the appeal process regarding the court’s valuation decision had expired, which realistically will take several years. The Legislature apparently recognized this problem in that the statute refers to the amount fixed by the court as a "proposed award”. However, the statute offers no guidance as to how a court is to presently fix the value of property as of some unknown future date. Although the instant parties agreed to value the property of Jamaica Water that the City proposes to take as of an arbitrary date and then to have an additional trial, after the appeal process had concluded regarding that initial decision, to ascertain the difference in value due to the addition or retirement of property during that period, that agreement does not eliminate the fact that at this point in time Jamaica Water has not suffered any actual damage and that the City seeks an advisory opinion from this court to fix the amount of damages prior to any taking.
Further, the question presented in the petition is not justiciable in that it is contingent upon the happening of a future event. It is settled that the courts will not entertain a declaratory judgment action when any declaration that the court might issue will become effective only upon the occurrence of a future event that may or may not come to pass (see, American Ins. Assn. v Chu, 64 NY2d 379; New York Pub. Interest Research Group v Carey, 42 NY2d 527, supra; Combustion Eng’g v Travelers Indem. Co., 75 AD2d 777, affd 53 NY2d 875). The disability of the courts to entertain such an action in such circumstances is not merely a matter of discretion, as is true in general with respect to entertaining declaratory judgment actions, but is one of law (see, Combustion Eng’g v Travelers Indem. Co., supra, at 778-779).
Here, the third sentence of the relevant portion of General City Law § 20 (2) provides that the City may withdraw the condemnation proceeding should any court determine that a method of compensation other than the income capitalization method be utilized, or if the "proposed award” is more than the rate base of the assets taken in condemnation as utilized by the Public Service Commission in setting rates and as certified by the Public Service Commission. This court notes that General City Law §20 (2) makes no provision for the *393 Public Service Commission to certify the rate base of the assets taken in condemnation (cf, former Condemnation Law §5-a).
This provision, permitting the City to withdraw this proceeding if the court decision determines value based on any method other than that fixed by the Legislature or fixes value in an amount greater than that set by the Legislature, clearly impacts on the effectiveness of any valuation decision by this court and makes the effectiveness of that decision contingent upon the future decision of the City. In permitting the City to withdraw the proceeding the statute permits a party to render the court’s valuation decision nugatory. All of the judicial energy expended in making that decision will have been squandered and wasted on a question rendered abstract and academic by the party seeking the relief (see, Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, supra).
The parties contend that the provisions of General City Law § 20 (2) at issue here do not present a question which is contingent because those provisions are patterned after certain portions of the former Condemnation Law which permitted a condemnation proceeding to be withdrawn under certain circumstances. The former Condemnation Law provided that in any proceeding to condemn property subject to the jurisdiction, supervision, and regulation of the Public Service Commission, the petition had to be served on the Public Service Commission, and where substantially all of the franchise, works, or system was being condemned, the Commission had to certify, after a hearing, the annual earnings reasonably to be anticipated by the condemnee pursuant to just and reasonable rates, as well as certifying the rate base and the rate of return from which its estimate of earnings was derived (Condemnation Law § 5-a). When the court rendered a final order fixing compensation, the Public Service Commission was to be served with a copy of the order and thereafter was a party to the proceeding for all purposes (Condemnation Law § 15). In particular, if the amount of compensation fixed by the court was not a capitalization of the anticipated earning of the company as certified to the court by the Public Service Commission, or if in the opinion of such Commission the amount fixed was so excessive or insufficient as not to be in the public interest, the Public Service Commission could apply to the court for an order authorizing the abandonment and discontinuance of the condemnation proceeding (Condemnation Law §18).
*394 Section 18 of the former Condemnation Law provided that either the plaintiff (condemnor) or the Public Service Commission could, within 30 days after entry of the final order, by motion made upon notice to all other parties, seek an order from the court authorizing and directing the abandonment and discontinuance of the proceeding. The statute permitted the court "in its discretion, and for good cause shown” to authorize the discontinuance of the proceeding upon the payment of certain fees and costs, and "upon such other terms and conditions as the court may prescribe.”
Although these provisions of the former Condemnation Law were challenged on the ground that they unconstitutionally impinged on the judicial function of determining just compensation, this argument was rejected by the Third and Fourth Departments in Matter of Niagara Mohawk Power Corp. v Public Serv. Commit. (52 AD2d 388 [3d Dept]) and Onondaga County Water Auth. v New York Water Serv. Corp. (285 App Div 655 [4th Dept]). Those Courts held that under the scheme of the former Condemnation Law the Public Service Commission acted only in an advisory capacity to the Court, did not usurp the constitutional powers of the duly authorized tribunals to determine compensation, and the figures certified by the Commission were to be used only as a yardstick to measure the justness of the award and not as the measure which either must, or should, be applied in any particular case.
The relevant provisions of General City Law § 20 (2), however, differ significantly from the provisions of the former Condemnation Law. In particular, General City Law § 20 (2) unconstitutionally places the court in the role of advising the City as to the method of valuation and the value of the property to be taken. This is accomplished by the provision that directs the court to render an initial decision regarding the appropriate method of valuation and fixing the value of the property. As noted above, the Legislature cannot constitutionally direct this court to make such a decision.
More significantly, under the prior law, the plaintiff or the Public Service Commission had to apply, with notice to all parties, to the court for an order permitting the abandonment or discontinuance of the condemnation proceeding, whereas General City Law § 20 (2) gives the City the unfettered right to withdraw the proceeding without any judicial permission, oversight or intervention. This court notes that under the former law an application to permit the discontinuance of a *395 condemnation proceeding was directed to the court’s discretion, could be granted only for good cause shown, and the court could impose such terms and conditions in the order permitting the discontinuance as it saw fit. In addition, if the court had rendered a monetary award for compensation prior to the application to discontinue and the order directing the discontinuance permitted the condemnor to renew the proceeding to condemn, the order directing the discontinuance had to provide that the proceeding could not be renewed without a tender or deposit into court of the amount of the award together with interest.
Clearly, the City’s right to withdraw a proceeding pursuant to General City Law § 20 (2) is vastly more expansive than the opportunity to seek an order directing discontinuance pursuant to the former Condemnation Law. Under the former law the condemnor had to ask the court to permit the discontinuance, which would involve a judicial decision, whereas section 20 (2) allows the City to unilaterally withdraw the proceeding without any judicial oversight. This extremely broad power to withdraw given to the City by the Legislature makes the relief sought by the instant petition only supportable upon a theory of "contingent justiciability”, and therefore the relief sought by the petition is nonjusticiable as speculative and abstract (see, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233, 240, supra).
The parties might argue that the relief requested by the petition is not contingent since General City Law § 20 (2) places the onus on the City to withdraw the proceeding, and unless the City withdraws the proceeding, title to the property in question will vest in the City. However, this court finds that argument to be without merit.
The Third Department decision in Matter of Saratoga Water Serv. v Saratoga County Water Auth. (190 AD2d 40, supra) holds that title to the property sought to be condemned will vest in the City upon the decision of the court concerning valuation, after the expiration of the appellate process regarding that decision, unless the City withdraws the proceeding, regardless of what method of valuation the court chooses to apply. However, General City Law §20 (2) gives the City a very broad opportunity to withdraw the proceeding. The City may withdraw the proceeding unless one particular method of valuation is utilized, or if the amount of the proposed award is more than a specified amount calculated pursuant to the Legislature’s formula. Put another way, the City may with *396 draw the proceeding, unless the court renders a decision which utilizes the particular method of valuation chosen by the Legislature, or if the amount of the compensation is more than the amount set by the Legislature. In this light, it is clear that the effectiveness of this court’s decision regarding valuation is contingent upon the City not exercising its extremely broad power to withdraw the proceeding. As such, the question presented by the petition is contingent and not justiciable.
Accordingly, this court concludes that the petition does not present a justiciable question in that it calls for an advisory opinion, presents a question which is not ripe for judicial review, and presents a question which is contingent. Since nonjusticiability implicates the subject matter jurisdiction of the court, the petition must be dismissed (see, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233, 241, n 3, supra).