THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIAM F. RATHBONE, Appellant.

A notary public is a public officer within the meaning of the provision of the State Constitution (Art. 13, § 5) prohibiting a "public officer or a person elected or appointed to a public office under the laws of this state" from receiving from any person or corporation or making use of "any free pass, free transportation," etc.

A notary public who, before the Constitution went into effect, had rightfully received a free pass over a railroad, is, by said provision, prohibited from thereafter using it while he continues to hold the office.

For a violation of this provision by a notary public, an action by the People is maintainable against him to have his office adjudged to be forfeited.

(Argued March 11, 1895; decided April 9, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 12, 1895, which affirmed an interlocutory judgment in favor of plaintiff entered upon an order overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* for appellant. A notary public is not a public officer within the meaning and intent of subdivision 5 of article 13 of the new Constitution, and, therefore, not subject to its provisions. (*R. R. Co.* v. *McClure*, 10 Wall. 511; *Newell* v. *People*, 7 N. Y. 9; *Riggs* v. *Palmer*, 115 id. 506; *In re Livingston*, 121 id. 94, 104; *People ex rel.* v. *Potter*, 47 id. 375, 379; *People* v. *Smith*, 47 id. 330, 336, 337; *R. R. Co.* v. *Roach*, 80 id. 339, 344; *People ex rel.* v. *Angle*, 109 id. 564, 568; *O'Brien* v. *Mayor, etc.*, 139 id. 543, 588; *Dibble* v. *Hathaway*, 11 Hun, 571, 574, 575; *Matter of Oaths of Attorneys*, 20 Johns. 492, 493; *Nostrand Case*, 47 N. Y. 375, 381, 382; *Smith* v. *Mayor, etc.*, 37 id. 518, 520; *Hathaway Case*, 71 id. 238, 243; *Young* v. *Bryan*, 6 Wheat. 146; *Whitaker* v. *Masterton*, 106 N. Y. 280, 282; *Bonnell* v. *Griswold*, 80 id. 128, 138; *Dean* v. *M. E. R. R. Co.*, 109 id. 540.) If, however, the court is constrained to hold that a notary is a public officer within the constitutional provision, defendant cannot, under the statement of facts contained in the complaint, be subjected to its penal consequences. (*Hartung Case*, 22 N. Y. 95; *Ratzky Case*, 29 id. 124; *O'Neil Case*, 109 id. 251; *Southwick* v. *Southwick*, 49 id. 510; *Sher-*

*ill* v. *Christ Church,* 121 id. 701; *S. R. T. Co.* v. *Mayor, etc.,* 128 id. 510 ; *Dash* v. *Van Kleecke,* 7 Johns. 477.)

*T. E. Hancock, Attorney-General,* for respondent. The defendant has violated the provisions of section 5, article XIII of the Constitution, and the order and judgment should be affirmed. (Laws of 1892, chaps. 681, 683; Revised Const. art. 13, § 5, art. 15, § 1.) There being no ambiguity in the language used, the scope of the constitutional provision must be held to embrace the defendant. (Suth. Stat. Const.; *People* v. *Lorillard,* 135 N. Y. 285–289.) The section being clear and explicit, it is not allowable to go outside of the language used for the purpose of invoking any rule of construction which may be applicable to words of doubtful meaning. (Suth. Stat. Const. § 235; *McCluskey* v. *Cromwell,* 11 N. Y. 601; *People* v. *Schoonmaker,* 63 Barb. 44; *Benton* v. *Wickwire,* 54 N. Y. 226; *Newell* v. *People,* 7 id. 97; Story on Const. § 404.)

GRAY, J. This action was brought to have the office held by the defendant as a notary public, in and for the county of Albany, in this state, adjudged to have been forfeited, for the violation by him of that provision of the Constitution of the state, which prohibits a " public officer or person elected or appointed to a public office under the laws of this state " from receiving " any free pass, free transportation, franking privilege, &c., &c., from any person or corporation," or from making use of the same. The constitutional provision referred to is contained in section 5 of article 13 of the Constitution of this state, which was adopted at the last general election and which went into effect on January 1st, 1895. The defendant demurred to the People's complaint, for not containing facts sufficient to constitute a cause of action ; and the question for our determination is whether a notary public fills a public office and is a public officer within the meaning of the constitutional provision.

The argument for the appellant proceeds upon the theory

that it could not have been intended to include such an office within a constitutional prohibition, which, obviously, was designed to guard against the mischief of a person, engaged in the discharge of the functions of a public office, being influenced in his action by a consideration for the corporations giving to him free passes or privileges. That a notary public is a public officer, I do not think to be open to serious doubt. He is one of the "public officers of this state," concerning whom chapter V of the Revised Statutes treats, and he is therein placed "in the class of judicial officers." The office of a notary public must be filled by appointment of the governor of the state, with the consent of the senate. The appointee, before he enters upon the duties of his office, is required to take and to file an oath to support the Constitution of the United States and of the state and to faithfully discharge the duties of his office. (R. S. chap. V, art. III.) His term of office is fixed by law and in chapter III of the Revised Statutes are contained "general provisions concerning the powers and duties of certain judicial officers;" among whom are specified notaries public. All their powers are defined by law and their acts, within their legitimate sphere, have force and solemnity, because having the express authorization and sanction of statute. The very designation of "notary public" indicates a relation, which the incumbent of the office sustains to the body politic. It is impossible to regard him as other than a public officer and we are brought to the consideration of the proposition of the appellant, that his could not be one of the public offices intended to be included within the constitutional provision in question.

I concede the difficulty, indeed the impossibility, of seeing any reason why a notary public should be prohibited from accepting any privileges or favors from corporations. On its face the proposition seems absurd and it is not easy to see the wisdom, or necessity, of incorporating in our Constitution a prohibition, so unnecessarily comprehensive in its terms; when it would have been possible to specify the public officers who were probably aimed at. But it is plainly to be

read there and for the very reason that it was possible to designate the public officers, who should be restrained from accepting the favors of corporations, we are, perhaps, the less able to disregard it. In the construction of constitutional provisions, the language used, if plain and precise, should be given its full effect and we are not concerned with the wisdom of their insertion. As adopted by the People the intent is to be ascertained, not from speculating upon the subject; but from the words in which the will of the People has been expressed. To hold otherwise would be dangerous to our political institutions. The Constitution is the basis upon which rests that complicated social organization called the state. It must be presumed that its framers understood the force of the language used and, as well, the people who adopted it. Not only were the revisers of the Constitution chargeable with knowledge as to who, under our laws, were regarded as public officers; but it is to be presumed that they used the words " public officer or person elected or appointed to a public office under the laws of this state," with some, if not a direct, reference, to the classification made in the Revised Statutes. It is not necessary to suppose that they had in mind notaries public, but that, knowing of the existence of the various classes of public officers created by statute, they intended, by the use of general words, to include all persons holding offices in the gift of the People. The latitude allowed in the construction of legislative acts is out of place, and would be unwise, when interpreting the fundamental law. Legislation aims at arranging the mechanism of the state for the benefit of its members and the question of intention, necessarily, is often of great importance and must be open to judicial inquiry; but the Constitution, which underlies and sustains the social structure of the state, must be beyond being shaken, or affected, by unnecessary construction, or by the refinements of legal reasoning. We may be compelled to have resort to such in the presence of contradictions, or of meaningless clauses; but not otherwise. I see no case here for surmising as to the possible, or even probable,

meaning of the section in question.   The People have plainly
declared in precise and unambiguous words that no public offi-
cer shall receive or make use of a pass, and, within the territorial.
limits of the state, that command is enforcible, and it must
be obeyed by every person who holds an office, which, like the .
one before us, is public in its relations to the body politic, by·
reason of the mode of its creation and of the powers con-
ferred and functions defined by the law.   We are not to look
beyond the instrument, for the purpose of ascertaining the
mischief against which the clause was directed, and thus
restrict its operation.   The only assumption, that we have any
right to indulge in, is that it was made as sweeping in its
terms, in order to prevent doubts and to obviate refinements
of reasoning as to its application to particular cases, under the
varying conditions of our political life.   I cannot do better
than, at this point, to append some forcible remarks made by
two eminent judges of this state.   In *People* v. *Purdy* (2
Hill, 35), BRONSON, J., delivering the opinion of the court as
to the construction of that clause of the Constitution which
provides that "the assent of two-thirds of the members
elected to each branch of the legislature shall be requisite to
*every* bill creating, continuing, altering or renewing any body
politic or corporate," said : "These words are as broad in
their signification as any which could have been selected for
the occasion from our vocabulary, and there is not a syllable
in the whole instrument tending in the slightest degree to
limit or qualify the universality of the language.   If the clause
can be so construed that it shall not extend alike to *all* corpo-
rations, whether public or private, it may then, I think, be set
down as an established fact, that the English language is too
poor for the framing of fundamental laws which shall limit
the powers of the legislative branch of the government."

In *Newell* v. *The People* (7 N. Y. 9), JOHNSON, J., laid
down this rule with reference to constitutional construction :
"If  *  *  *  the words embody a definite meaning, which
involves no absurdity, and no contradiction between different
parts of the same writing, then the meaning apparent upon

the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed; in such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have the right to add or to take away from that meaning. This is true of every instrument, but when we are speaking of the most solemn and deliberate of all human writings, those which ordain the fundamental law of states, the rule rises to a very high degree of significance. It must be very plain, nay, absolutely certain, that the People did not intend what the language they have employed, in its natural signification, imports, before a court will feel itself at liberty to depart from the plain reading of a constitutional provision."

The further point that the defendant cannot be subjected to the penal consequences of this constitutional provision is untenable; inasmuch as the public officer is prohibited from making use of a pass, as well as from receiving one. It is no answer to say that the appellant, having rightfully received a free pass for transportation over the railroad before the Constitution went into effect, cannot be prevented from using what is his property. It is doubtful whether it is to be regarded as property, in the true sense of the term. But that is of slight importance. As a privilege extended to him by the corporation, the People may say to him that, while holding from them his public office, he shall not make use of this privilege. The provision was designed for the benefit of the public and had no other object than to do away utterly with the power of corporations to influence any public officer in the performance of the duties of his office.

For these reasons I think the order and judgment below should be affirmed.

All concur (Bartlett, J., in result).

Order and judgment affirmed.