Byrnes v Senate of the State of N.Y. (2024 NY Slip Op 24136)

[*1]

Byrnes v Senate of the State of N.Y.

2024 NY Slip Op 24136

Decided on May 7, 2024

Supreme Court, Livingston County

Doyle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 7, 2024
Supreme Court, Livingston County

Marjorie Byrnes, individually and as a member of the New York State Assemble, TAWN FEENEY and SUSAN LUNDGREN, Plaintiffs,

against
The Senate of the State of New York, ANDREA STEWART-COUSINS, as the President Pro Tempore and Majority Leader of the Senate, ROBERT ORTT, as Minority Leader of the Senate, THE ASSEMBLY OF THE STATE OF NEW YORK, CARL HEASTIE, as Speaker of the Assembly, WILLIAM BARCLAY as Minority Leader of the Assembly, and the NEW YORK STATE BOARD OF ELECTIONS, Defendants.

Index No. 000778-2023

Christian Browne, Esq., McLAUGHLIN & STERN, LLP and Bobbie Anne Flower Cox, Esq., COX LAWYERS PLLC for the Plaintiffs
Letitia James, New York Attorney General, by Emily Fusco, Esq., and Heather McKay, Esq., of counsel, for the New York State Senate, New York State Assembly, and the Majority Defendants 
Lisa A. Perillo, Esq., Perillo Hill LLP, for the Defendants Robert Ortt, as Minority Leader of the Senate, and William Barclay, as Minority Leader of the Assembly

Daniel J. Doyle, J.

This case presents novel issues concerning the New York State Legislature's actions in proposing amendments to the Constitution in derogation of the explicit process outlined in § 1 of Article XIX of the New York Constitution and the ability of citizens to challenge those actions in a plenary proceeding.
On July 1, 2022, the New York State Legislature (hereinafter "Legislature") adopted a [*2]Concurrent Resolution which sought to amend the Constitution.[FN1]
On October 30, 2023, Plaintiffs initiated this action seeking declaratory judgment that the Legislature violated § 1 of Article XIX of the New York Constitution in adopting the Concurrent Resolution and an order removing the proposed amendment from the ballot for the general election of November 5, 2024.
Defendants, the Senate of the State of New York, Andrea Stewart-Cousins (as the President Pro Tempore and Majority Leader of the Senate), the Assembly of the State of New York, and Carl Heastie (as Speaker of the Assembly of the State of New York) (collectively, the" Majority Defendants") moved to dismiss the complaint for failure to state a cause of action (CPLR Rule 3211 [a][7]), lack of subject matter jurisdiction (CPLR Rule 3211[a][2]), lack of capacity to sue (CPLR Rule 3211 [a][3]), and lack of standing (CPLR Rule 3211 [a][5]). As the parties agreed there were no issues of fact, and upon notice to the parties, the Court converted the motion to a motion for summary judgment.[FN2]
The plaintiffs cross-move for summary judgment on their complaint. Both parties seek a declaration in their favor.[FN3]

For the reasons that follow, the defendants' summary judgment motion is GRANTED in part, Andrea Stewart-Cousins and Carl Heastie are dismissed as defendants herein and the remaining requested relief is denied. The plaintiffs' summary judgment motion is GRANTED.
Relevant Facts
On July 1, 2022, both houses of the Legislature introduced concurrent resolutions seeking to amend § 11 of Article I of the Constitution, the "Bill of Rights". In the Senate the resolution was advanced as Senate Bill S. 51002 and in the Assembly as Assembly Bill A. 41002 (hereinafter the "Concurrent Resolution"). Immediately following the introduction of the Concurrent Resolution, it was referred to the Attorney General for her opinion, as required by § 1 of Article XIX of the New York Constitution.
§ 1 of Article XIX of the New York Constitution states (emphasis supplied):
Any amendment or amendments to this constitution may be proposed in the senate and assembly whereupon such amendment or amendments shall be referred to the attorney-general whose duty it shall be within twenty days thereafter to render an opinion in writing to the senate and assembly as to the effect of such amendment or amendments upon other provisions of the constitution.[FN4]Upon receiving such opinion, if the [*3]amendment or amendments as proposed or as amended shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, and the ayes and noes taken thereon, and referred to the next regular legislative session convening after the succeeding general election of members of the assembly, and shall be published for three months previous to the time of making such choice; and if in such legislative session, such proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the legislature to submit each proposed amendment or amendments to the people for approval in such manner and at such times as the legislature shall prescribe; and if the people shall approve and ratify such amendment or amendments by a majority of the electors voting thereon, such amendment or amendments shall become a part of the constitution on the first day of January next after such approval. Neither the failure of the attorney-general to render an opinion concerning such a proposed amendment nor his or her failure to do so timely shall affect th[e] validity of such proposed amendment or legislative action thereon.[FN5]

The same day the Concurrent Resolution was forwarded to the Attorney General (July 1st), both the Senate and the Assembly voted to adopt the Concurrent Resolution. At the time of their vote, neither the Senate nor the Assembly had received the opinion from the Attorney General.
The Attorney General issued her opinion on July 6th, and it was received by the Legislature on July 13th.
The Legislature referred the proposed amendment to the next session of the Legislature, and on January 24, 2023, both houses adopted the second concurrent resolution. The proposed amendment is scheduled to appear on the ballot to be voted on by the electorate on November 5, 2024.
The Constitution Prevents the Legislature from Acting on a Proposed Amendment until either Receiving the Attorney General's Opinion or Twenty Days has Passed Since Referral to the Attorney General
In assessing the language of § 1 of Article XIX to the Constitution and giving it its [*4]ordinary meaning, and ensuring that the entire Article is read to avoid a construction that treats a word or phrase as superfluous,[FN6]
the Court concludes that it was the intent of the People to: (1) ensure that the legislators voting on a proposed constitutional amendment received the benefit of the Attorney General's opinion on its impact on other provisions in the Constitution; (2) require that the Attorney General provide the requested opinion within twenty (20) days; (3) prohibit the Legislature from acting until it received the opinion or the twenty day period had expired, and (4) authorize the Legislature to act on the proposed amendment after twenty days had passed, even if the Attorney General failed to issue the opinion, or did so after the twenty day period (and the Legislature having already acted).
"In construing the language of the Constitution[,] as in construing the language of a statute, the courts ... give to the language used its ordinary meaning" (Matter of Carey v. Morton, 297 NY 361, 366, 79 N.E.2d 442 [1948], citing Matter of Sherrill v. O'Brien, 188 NY 185, 207, 81 N.E. 124 [1907])." (Burton v. New York State Dep't of Tax'n & Fin., 25 NY3d 732, 739 [2015].) "In the construction of constitutional provisions, the language used, if plain and precise, should be given its full effect" and "[i]t must be presumed that its framers understood the force of the language used and, as well, the people who adopted it" (People v. Rathbone, 145 NY 434, 438, 40 N.E. 395 [1895]). Our Constitution is "an instrument framed deliberately and with care, and adopted by the people as the organic law of the State" and, when interpreting it, we may "not allow for interstitial and interpretative gloss ... by the other [b]ranches [of the government] that substantially alters the specified law-making regimen" set forth in the Constitution (Matter of King v. Cuomo, 81 NY2d 247, 253, 597 N.Y.S.2d 918, 613 N.E.2d 950 [1993])." (Harkenrider v. Hochul, 38 NY3d 494 [2022].)
The plain language of Article XIX begins with "the amendment or amendments shall be referred to the attorney-general whose duty it shall be within twenty days thereafter to render an [*5]opinion in writing to the senate and assembly as to the effect of such amendment or amendments upon other provisions of the constitution." As explained in the Revised Record of the Constitutional Convention of the State of New York (1938), this language was inserted into the Article as it was believed it would be "very helpful" to the Legislature to obtain the Attorney's General's opinion on the proposed amendment. The language imposes a duty upon the Attorney General to provide the opinion in twenty days.
"Upon receiving such opinion," the Legislature may thereafter vote on the proposed amendment. This language compels the conclusion that the People intended for the Legislature to wait to receive the Attorney General opinion prior to voting on the proposed amendment. This is the only reasonable interpretation and is supported by the characterization provided by the Chairman of the 1938 Constitutional Convention when he stated: "upon this report coming back within 20 days, then the Legislature will proceed to act upon it as it sees fit" (emphasis supplied).
The Majority Defendants, however, refer to the language added by amendment in 1941 to argue that regardless of the language outlined above, the Legislature need not wait the required 20 days and can act on the proposed amendment prior to receiving an opinion from the Attorney General. The Court declines to adopt their interpretation.
In 1941 Article XIX was amended to add the following: "[n]either the failure of the attorney-general to render an opinion concerning such a proposed amendment nor his or her failure to do so timely shall affect th[e] validity of such proposed amendment or legislative action thereon." Although the parties do not provide any contemporaneous legislative memorandums or statements by other officials that elucidate why this amendment was proposed by the Legislature, the most reasonable inference is that it was to prevent a "pocket veto" by the Attorney General of the proposed amendment. Thus, the language addresses two possibilities of non-compliance by the Attorney General: (1) the Attorney General refuses to submit an opinion, and (2) the Attorney General delays providing the opinion beyond the twenty (20) day limit.
The first clause ("[n]either the failure of the attorney-general to render an opinion concerning such a proposed amendment") prevents the Attorney General from thwarting the passage of the proposed amendment by refusing to follow his or her duty in providing the opinion. The second clause ("nor his or her failure to do so timely shall affect th[e] validity of such proposed amendment or legislative action thereon" [emphasis supplied]) allows the Legislature to proceed with the vote on the proposed amendment after the period of twenty (20) days has expired. The use of the word "timely" as a modifier to the word "failure" compels the conclusion that the language refers to the duty to provide the opinion within twenty days, and the issuance of the opinion after that period does not require invalidation of legislative action taken after the period had expired but prior to the receipt of the opinion.
The Majority Defendants argue that this language requires the conclusion that the Legislature is free to act on the proposed amendment at any time- even prior to the expiration of the twenty-day period as occurred here - regardless of whether the Attorney General provides an opinion.[FN7]
This interpretation, however, would require the Court to ignore the plain language of [*6]the Article and would render meaningless the intent of the People (to aid the deliberative process). It would also require the Court to conclude that the language "whose duty it shall be within twenty days thereafter to render an opinion" and "upon receiving such opinion" is superfluous. In essence, the Majority Defendants argue for an interpretation that would render the Attorney General's duty to submit an opinion meaningless as the Legislature could act on the proposed amendment at any time, as they did here.[FN8]

In adopting the 1941 amendment, the People did not remove the phrase "[u]pon receiving such opinion." To harmonize that phrase with the language added by the 1941 amendment the Court must conclude that the intent of the People expressed in Article XIX is to provide the Legislature the authority to act on the proposed amendment only after the Attorney General has provided the opinion or failed in his or her duty to provide the required opinion with the twenty-day period. "When language of a constitutional provision is plain and unambiguous, full effect should be given to "the intention of the framers * * * as indicated by the language employed" and approved by the People (Settle v. Van Evrea, 49 NY 280, 281 [1872]; see also, People v. Rathbone, 145 NY 434, 438, 40 N.E. 395)." (King v. Cuomo, 81 NY2d 247, 253 [1993].)
The Majority Defendants argue that their position is supported by historical precedents and the fact that the Governor has the authority to call the Legislature into "extraordinary" session at which a proposed amendment may be voted. The Court finds those arguments unavailing.
First, the historical precedent of how the Legislature has proposed amendments after the 1941 amendment to Article XIX — if contrary to the intent of the People as defined by the plain language of the Constitution — is irrelevant. (King v. Cuomo, supra.) Second, the Governor's authority to call the Legislature into extraordinary session does not obviate the intent of the People (as expressed in Article XIX) that amendments to the Constitution be pursued by the Legislature in a deliberative manner and with the input of Attorney General. Notably, the Attorney General is not required to wait twenty days to provide his or her opinion. Presumably, should the need to seek an expeditious amendment to the Constitution exist (a dubious proposition), the Attorney General would provide his or her opinion with equal alacrity.[FN9]

Finally, the Majority Defendants cite to a 1961 Opinion of the Attorney General as support for their position. However, a close examination of that opinion establishes that it does not support the Majority Defendants' position. In that opinion the Attorney General wrote (emphasis added):
. . .In my opinion the validity of an amendment is not affected by the absence of the Attorney General's opinion thereon, whether due to his failure of otherwise.
Since the Legislature may recall a concurrent resolution if in the Attorney General's opinion,the proposed Amendment will affect some other provision of the Constitution, the purpose of the opinion would not be frustrated by the Legislature's acting upon the proposal prior to the receipt of the opinion.
The Attorney General based his opinion upon the fact that at the time the 1961 opinion was issued, the Legislature had the presumed authority to recall a bill it had passed. However, the ability of the Legislature to recall bills was curtailed by King v. Cuomo, supra. "In King, the Presentment Clause of the New York Constitution (art IV, § 7) was held violated by the bicameral practice of "recalling" or "reacquiring" passed bills after presentment to the Governor, but prior to gubernatorial action on the bill. King concluded that the Legislature's practice "undermine[d] the integrity of the law-making process as well as the underlying rationale for the demarcation of authority and power in this process" (id., at 255, 597 N.Y.S.2d 918, 613 N.E.2d 950)." (Campaign For Fiscal Equity, Inc. v. Marino, 87 NY2d 235, 239 [1995].)
Although King v. Cuomo, supra, concerned bills passed by both houses and sent to the Governor, the procedure outlined in Article XIX does not contemplate a "recall" procedure and instead mandates that upon approval the proposed amendment must be referred "to the next regular legislative session. . ."[FN10]
Thus, referral to the next legislature is mandated by the clear words of the Constitution. Upon such referral, the legislature no longer has the authority to "recall" the bill. As the Court of Appeals noted in King v. Cuomo, supra:
The putative authority of the Legislature to recall a passed bill once it has been formally transmitted to the Governor "is not found in the constitution" (People v. Devlin, 33 NY 269, 277). We conclude, therefore, that the practice is not allowed under the Constitution. To permit the Legislature to use its general rule-making powers, pertaining to in-house procedures, to create this substantive authority is untenable. As this Court stated in Devlin "[w]hen both houses have * * * finally passed a bill, and sent it to the governor, they have exhausted their powers upon it" (id., at 277 [emphasis added])."
(King v. Cuomo, 81 NY2d at 252—53.)[FN11]
Since the Legislature cannot "recall" a concurrent resolution it has passed,[FN12]
the 1961 Attorney General Opinion is no longer supportive of the Majority Defendants' position. In fact, considering the holding of King and its progeny- and the language of Article XIX requiring referral of the proposed amendment to the next legislative session - the 1961 Attorney General opinion supports the plaintiffs' position in that the purpose of seeking the opinion of the Attorney General prior to voting on the proposed amendment "would [] be frustrated by the Legislature's acting upon the proposal prior to the receipt of the opinion."[FN13]

The Plaintiff's Claims are Justiciable
The Majority Defendants argue that the plaintiffs' cause of action is not justiciable, arguing that: (1) the separation of powers bars judicial review of the Legislature's procedures for adopting the proposed amendment, (2) the issue is not "ripe" for review as the amendment has not been voted on by the electorate, and (3) that the plaintiffs do not have standing. Each argument will be addressed seriatim.
The Courts have Authority to Review Unconstitutional Acts of the Legislature
The Majority Defendants argue that this Court cannot intrude upon the internal practices and procedures of the Legislature to review its compliance with Article XIX of the Constitution. The Court rejects this argument.
The procedures utilized by the Legislature in proposing amendments to the Constitution are set forth not in internal rules and procedures of the Legislature, but in Article XIX of the Constitution. "Our precedents are firm that the "courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government" (Saxton v. Carey, 44 NY2d 545, 551, 406 N.Y.S.2d 732, 378 N.E.2d 95; New York State Bankers Assn. v. Wetzler, 81 NY2d 98, 102, 595 N.Y.S.2d 936, 612 N.E.2d 294; see also, Myers v. United States, 272 U.S. 52, 116, 47 S.Ct. 21, 25, 71 L.Ed. 160; Matter of New York State Inspection, Sec. & Law Enforcement Empls. v. Cuomo, 64 NY2d 233, 239, 485 N.Y.S.2d 719, 475 N.E.2d 90)." (King v. Cuomo, 81 NY2d at 251.)
Courts have the authority to review actions taken by the Legislature to ensure compliance with the Constitution, even if those acts are fairly characterized as "internal rules"- which is not the case herein. "We conclude that the courts do not trespass "into the wholly internal affairs of the Legislature" (Heimbach v. State of New York, 59 NY2d 891, 893, 465 N.Y.S.2d 936, 452 N.E.2d 1264, appeal dismissed 464 U.S. 956, 104 S.Ct. 386, 78 L.Ed.2d 331) when they review and enforce a clear and unambiguous constitutional regimen of this nature." (Id.)
As the plaintiffs' cause of action concerns whether the Legislature complied with Article XIX in proposing the amendment to the Constitution, this Court has authority to resolve the issues herein.
The Issue Herein is Ripe for Review
The Majority Defendants also argue that the plaintiffs' claims are not ripe for review, as the electorate may not approve the amendment at the general election on November 5, 2024.
Important to the resolution of this issue is the fact that the plaintiffs' claims do not challenge the substance of the proposed amendment. Plaintiffs do not seek to invalidate the proposed amendment arguing that — should it pass - it violates other constitutional provisions ("facial attack" on its constitutionality) or is unconstitutional as applied to them (an "as applied" challenge), and thus plaintiff will be harmed if the voters approve of the amendment. Had the plaintiffs made those claims, those claims would not be ripe for review. (See e.g., New York Pub. Int. Rsch. Grp., Inc. v. Carey, 42 NY2d 527 [1977].)
Plaintiffs contend instead that the amendment process employed by the Legislature to propose the amendment was unconstitutional as it violated Article XIX of the Constitution. Plaintiffs' claim became "ripe" once the Legislature acted in violation of Article XIX and approved the Concurrent Resolution and thereafter placed the proposed amendment on the ballot. (See New York State Bankers Ass'n, Inc. v. Wetzler, 81 NY2d 98 [1993].)
As noted by the Court of Appeals in New York Pub. Int. Rsch. Grp., Inc. v. Carey (42 NY2d 527 [1977]):
That is not to say that the courts may never consider the validity of proposed legislation. This has been done on several occasions, although with reluctance and then only incidentally to resolve a dispute as to whether the proposition should be placed or remain on the ballot (see, e.g., Matter of McCabe v Voorhis, supra; Matter of Tierney v Cohen, 268 NY 464; Matter of Osborn v Cohen, 272 NY 55; Matter of Mooney v Cohen, 272 NY 33; Johnson v Etkin, 279 NY 1; Matter of Stroughton v Cohen, 281 NY 343; Matter of Atwood v Cohen, 291 NY 484).
These are not advisory opinions. The effect of the court's determination in those cases does not depend on the outcome of the election. On the contrary, those orders have the immediate and practical effect of determining whether the proposition should be [*7]submitted to the voters, or whether all the expense and human effort involved in the election process would be wasted because of fatal defects in the law.
(Id. at 531-532. See also Fossella v. Dinkins, 66 NY2d 162 [1985].)
Plaintiffs claim is that the proposed amendment was passed by the Legislature in derogation of Article XIX of the Constitution and should therefore be removed from the ballot. "Where, as here, the relief requested is the preclusion from the ballot of a proposal sought to be placed before the voters, the proceeding is not rendered premature by the fact that unless approved the challenged law would not become effective, for the requested relief is not dependent upon the result of the election and would instead have an immediate effect." (Cantrell v. Hayduk, 45 NY2d 925, 926, [1978].)
Plaintiffs Have Standing to Challenge the Adoption of the Concurrent Resolution
The Majority Defendants argue that citizens do not have standing to challenge unconstitutional acts of the Legislature, and Plaintiff Marjorie Byrnes, as a Member of the Assembly, also lacks standing. The Court disagrees.
Plaintiffs claim the Legislature violated Article XIX of the Constitution in passing the Concurrent Resolution without following the requisite procedures outlined in that Article. The issue of the correct constitutional interpretation of Article XIX, and whether the Legislature violated same in proposing the amendment herein, are issues of public significance, but there is likely no member of the general public that can allege a specific harm to satisfy common-law standing principles.[FN14]

However, there is an exception to traditional standing principles applicable herein. As the Court of Appeals noted in Saratoga Cnty. Chamber of Com., Inc. v. Pataki (100 NY2d 801 [2003]):
It follows that our doctrines governing standing must be sensitive to claims of institutional harm. Actions of this type can serve as a means for citizens to ensure the continued vitality of the constraints on power that lie at the heart of our constitutional scheme (cf. Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 10 [1975]; Committee for an Effective Judiciary v State, 209 Mont 105, 112-113, 679 P2d 1223, 1227 [1984]; State [*8]ex rel. Howard v Oklahoma Corp. Commn., 614 P2d 45, 52 [Okla 1980]). Thus, where a denial of standing would pose "in effect ... an impenetrable barrier to any judicial scrutiny of legislative action," our duty is to open rather than close the door to the courthouse (see Boryszewski, 37 NY2d at 364; see also State ex rel. Clark v Johnson, 120 NM 562, 904 P2d 11 [1995]; Rios v Symington, 172 Ariz 3, 833 P2d 20 [1992]; State ex rel. Sego v Kirkpatrick, 86 NM 359, 363, 524 P2d 975, 979 [1974]).
(Id. at 814.)[FN15]
Should this Court not grant plaintiffs standing, it is likely that the actions of the Legislature in proceeding contrary to the requirements of Article XIX would be insulated from judicial review. As noted above, the procedures outlined in Article XIX express the intent of the People that the Legislature receive input from the Attorney General on the impact of the proposed amendment on the Constitution's provisions, thus improving the deliberative process. Accordingly, this Court concludes that plaintiffs, as citizens, have standing to address the claim herein that the Legislature's passing of the Concurrent Resolution was in contravention to the procedures required by Article XIX. (Saratoga Cnty. Chamber of Com., Inc. v. Pataki, supra.)
The Court also concludes that Plaintiff Marjorie Byrnes, as a Member of the Assembly, has standing in her capacity of a member of the New York State Legislature. The harm alleged here - failure of the Legislature to follow the mandates of Article XIX of the Constitution — deprived Assemblymember Byrnes of the opinion of the Attorney General and necessarily impacted her obligations as a member of the Legislature voting on a resolution seeking to amend the constitution. The Court determines this is sufficient to confer standing. (See gen. Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk, 77 NY2d 761 [1991]; see also Sullivan v. Siebert, 70 AD2d 975 [3rd Dept. 1979]: "However, the challenge to the standing of petitioner [Assemblymember] Sullivan to pursue the relief sought must fail. Section 164 of the Executive Law provides that annual reports are to be made to the Governor and the Legislature. As a member of the Legislature, Sullivan has a statutory right to receive copies of the reports. This right confers standing upon Sullivan to pursue this action.")
This Action is Properly a Plenary Action and Not a Special Proceeding
The Majority Defendants argue that as the plaintiffs are challenging the procedures used by the Legislature in the adoption of the proposed amendment, this action is properly maintained as an Article 78 proceeding and thus subject to a four month statute of limitations.
Regardless of how the instant action was initiated, this Court must determine "the true [*9]nature of the case" to determine the appropriate statute of limitations period. "In making such a determination, where the nature of an action is at issue, it is necessary to ""examine the substance of [the] action to identify the relationship out of which the claim arises and the relief sought" (citations omitted). If the court determines that the parties' dispute can be, or could have been, resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs (citations omitted)." (Dandomar Co., LLC v. Town of Pleasant Valley Town Bd., 86 AD3d 83, 90—91 [2nd Dept. 2011]; see also Foley v. Masiello, 38 AD3d 1201 [4th Dept. 2007].)
As the parties dispute the operative effect of the language employed in Article XIX of the Constitution, the essence of this case is one of constitutional interpretation- not whether clearly defined procedures were properly followed. (See e.g., P & N Tiffany Properties, Inc. v. Vill. of Tuckahoe, 33 AD3d 61 [2nd Dept. 2006].) Challenging the validity of a legislative act is properly a declaratory judgment action. (See Rochester Police Locust Club, Inc. v. City of Rochester, 196 AD3d 74, 77 [4th Dept. 2021], aff'd, 41 NY3d 156 [2023]): "The gravamen of plaintiffs' lawsuit is that Local Law No. 2 is invalid in certain key aspects, and "it is well established that an article 78 proceeding is not the proper vehicle to test the validity of a legislative enactment" (Kamhi v Town of Yorktown, 141 AD2d 607, 608 [2d Dept 1988], affd 74 NY2d 423 [1989])." See also Parker v. Town of Alexandria, 138 AD3d 1467 [4th Dept. 2016]; Foley v. Masiello, supra.)
Furthermore, "[] where the substance of the law, "its wisdom and merit" (Matter of Voelckers v Guelli, 58 NY2d 170, 177 [1983]), or its constitutionality, is challenged, then the proper procedure is to commence an action for a declaratory judgment (see New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194 [1994]; P & N Tiffany Props., Inc. v Village of Tuckahoe, 33 AD3d 61, 64 [2006])." (Highland Hall Apartments, LLC v. New York State Div. of Hous. & Cmty. Renewal, 66 AD3d 678, 681 [2nd Dept. 2009], [emphasis supplied].) Here, the parties are disputing the meaning of the language of Article XIX and what duties it imposes both upon the Attorney General and the Legislature. As the parties are urging different constitutional interpretations of the provisions contained in Article XIX, and thus disputing whether the passage of the Concurrent Resolution was constitutional, a declaratory judgment action is appropriate.
Laches does not Bar this Action
The Majority Defendants argue that the plaintiffs' delay in initiating this action requires the Court to dismiss under the doctrine of laches.[FN16]

"We have defined laches as an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party (see Matter of Barabash, 31 NY2d 76, 81 [1972]; see also Matter of Dreikausen v Zoning Bd. of Appeals, 98 NY2d 165, 173 n 4 [2002]). The mere lapse of time, without a showing of prejudice, will not sustain a defense of laches (see Galyn v Schwartz, 56 NY2d 969, 972 [1982]; Sorrentino v Mierzwa, 25 NY2d 59 [1969]; Skrodelis v Norbergs, 272 AD2d 316 [2d Dept 2000]). The defense has been applied in equitable actions and declaratory judgment actions (both of which are governed by the six-year [*10]catchall provision of CPLR 213 [1]) where the defendant shows prejudicial delay even though the limitations period was met. [FN omitted]." (Saratoga Cnty. Chamber of Com., Inc. v. Pataki, 100 NY2d at 816.)
The Majority Defendants fail to allege sufficient prejudice. In alleging prejudice, the Majority Defendants argue that the proposed amendment is scheduled to be voted upon at the general election in November of 2024 and "forc[ing] the entire process to start anew" would be prejudicial. They also argue that a declaration in favor of the plaintiffs would deprive the voters of the ability to vote on the amendment. This does not constitute sufficient prejudice to warrant invocation of laches.
Unlike challenges brought under election law proceedings where the delay in initiating the action may deprive voters of their right to vote (see e.g., Amedure v. State, 210 AD3d 1134 [3rd Dept. 2022]) or impose insurmountable burdens on Defendant New York Board of Elections to oversee an efficient election process (see e.g., League of Women Voters of New York State v. New York State Bd. of Elections, 206 AD3d 1227 [3rd Dept. 2022], leave to appeal denied, 38 NY3d 909 [2022], reargument denied, 38 NY3d 1120 [2022]), the delay here did not result in any prejudice to the Legislature. The Legislature may follow the proper procedures mandated by Article XIX and place the proposed amendment on the ballot on a future date.[FN17]
Additionally, the voters have no right to vote on an amendment placed on the ballot in derogation of the procedures required by Constitution. (See e.g., Town of Cortlandt v. Vill. of Peekskill, 281 NY 490 [1939].)
Defendants Stewart-Cousins and Heastie are Dismissed from Suit
Andrea Stewart-Cousins and Carl Heastie move to dismiss the action as to them arguing that legislative immunity prevents suit for legislative actions taken by them. The Court agrees.
As observed by the Court of Appeals in People v. Ohrenstein (77 NY2d 38 [1990]):
The State Constitution provides: "For any speech or debate in either house of the legislature, the members shall not be questioned in any other place" (NY Const., art. III, § 11). We have not previously considered the scope of the immunity granted by this section, but it appears that it was intended to provide at least as much protection as the immunity granted by the comparable provision of the Federal Constitution (New York State Constitutional Convention Committee, Problems Relating to Legislative Organization and Powers, at 57 [1938]). The Supreme Court has held that the Speech or Debate Clause confers immunity on members of Congress for legislative acts but does not extend to everything a legislator does which is somehow related to his role even [*11]though the act is lawful and generally expected of a legislator (Hutchinson v. Proxmire, supra).
Legislative acts have been defined as those which are an integral part of the legislative process, and have been held to include votes and speeches on the floor of the House as well as the underlying motivations for these activities (Hutchinson v. Proxmire, supra; United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681; United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507).
(Id. at 53-54.)
"The fundamental purpose of the clause is to insure that the legislative function may be performed independently (Eastland v. United States Servicemen's Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 1820—21, 44 L.Ed.2d 324; Gravel v. United States, 408 U.S. 606, 618, 92 S.Ct. 2614, 2623—24, 33 L.Ed.2d 583). The US Supreme Court has interpreted the Federal Speech or Debate Clause broadly to effectuate its purposes, holding that any acts by members of Congress or their aides within the performance of their legislative functions are beyond judicial scrutiny (see, Gravel v. United States, supra, at 616, 624—625, 92 S.Ct. at 2622—2633, 2626—2627). The clause not only shields legislators from the consequences of litigation, but also protects them from the burden of defending themselves in court (see, Powell v. McCormack, 395 U.S. 486, 502—503, 89 S.Ct. 1944, 1953—54, 23 L.Ed.2d 491; Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427—28, 18 L.Ed.2d 577)." (Straniere v. Silver, 218 AD2d 80, 83 [3rd Dept. 1996].)
Here, Stewart-Cousins and Heastie — to the extent they are sued as representatives for the Senate and Assembly, respectively, are immune from suit and must be dismissed from this action.[FN18]

The Appropriate Relief
As the Court finds that the Legislature violated the procedure required by Article XIX, the appropriate remedy is declaring the Concurrent Resolution adopted in derogation of the constitutional procedures void and removing the proposed amendment from the ballot.
The Court declines to adopt the arguments advanced by the Majority Defendants that the Legislature "substantially complied" with requirements of Article XIX, or to apply the "harmless error doctrine", or that the relief herein should be limited to the Court determining that Article XIX was violated but refusing to remove the proposed amendment from the ballot. The Constitution is the supreme will of the People. Its amendment should be undertaken by strict adherence to the will of the People as expressed in Article XIX. "Substantial" compliance is not compliance, and this Court cannot condone actions taken by the Legislature in derogation of the expressed will of the People. The Legislature's vote on the Concurrent Resolution prior to receiving the opinion of the Attorney General frustrated the deliberative process intended by the People in § 1 of Article XIX.
Nor does the Court accept the Majority Defendants' argument that finding in favor of the [*12]plaintiffs imperils other amendments passed by the Legislature under the flawed procedures it previously employed. Those amendments are not subject to challenge here, and the defense of laches would likely invalidate challenges to amendments already adopted by the People.
Based upon the foregoing, the oral argument conducted on April 16, 2024, and the papers submitted herein,[FN19]
it is hereby
ORDERED that the Majority Defendants' motion for summary judgment in GRANTED, in part, and Defendants Andrea Stewart-Cousins and Carl Heastie are dismissed from suit, and the motion is otherwise is DENIED; and it is further
ORDERED that the plaintiffs' motion for summary judgment is GRANTED; and it is further
ORDERED, ADJUDGED and DECREED that that the New York State Legislature violated §1 of Article XIX of the Constitution in adopting the Concurrent Resolution, and the Concurrent Resolution is declared null and void, and the proposed amendment shall be removed from the ballot for the general election of November 5, 2024.
This constitutes the Decision and Order of the Court.
Dated: May 7, 2024
Honorable Daniel J. Doyle, JSC

Footnotes

Footnote 1:The merits of the proposed amendment to the Constitution are not an issue herein.

Footnote 2:See Decision and Order of the Hon. Daniel J. Doyle dated March 14, 2024 (NYSCEF Docket # 41).

Footnote 3:Defendant New York State Board of Elections filed a "no position" letter with the Court (NYSCEF Docket # 7).

Footnote 4:This language was approved during the 1938 Constitutional Convention. At that Convention, the Chairman explained the proposed amendment as follows (emphasis supplied):

 Mr. Pitcher: Mr. Chairman, may I move No. 77?
The Secretary: General Order No. 77, Int. No. 694, Pr. No. 837, by the Committee on Future Amendments. Proposed constitutional amendment to amend Article XIV of the Constitution, in relation to future amendments and future constitutional conventions.
 
The Chairman: If you will permit me, gentlemen, I have not the proposal here, but I can explain it. The only substantial change is that provision on lines 6 to 11 of the proposal, whereby it is provided that when a proposed amendment is submitted to the Legislature, it will immediately be forwarded to the Attorney General for his report as to its effect upon other provisions of the Constitution; and upon this report coming back within 20 days, then the Legislature will proceed to act upon it as it sees fit. In other words, it was thought that it would be very helpful to the Legislature if the Attorney-General made a report as to the effect of the language of the proposal on other provisions of the Constitution.
Revised Record of the Constitutional Convention of the State of New York (1938).

Footnote 5:This language was approved by the electorate in November of 1941. Neither party has provided any relevant, contemporaneous information — such as legislative memorandums or floor debate — as to the intent of the Legislature in proposing this language.

Footnote 6:"We have long and repeatedly held that "in construing the language of the Constitution as in construing the language of a statute, the courts should look for the intention of the People and give to the language used its ordinary meaning" (Sherrill, 188 NY at 207, 81 N.E. 124). The " 'starting point for discerning legislative intent is the language of the statute itself' " (Matter of Lynch v. City of New York, 40 NY3d 7, 13, 192 N.Y.S.3d 50, 213 N.E.3d 110 [2023], quoting Matter of DaimlerChrysler Corp. v. Spitzer, 7 NY3d 653, 660, 827 N.Y.S.2d 88, 860 N.E.2d 705 [2006]), such that the " 'literal language of a statute controls' " (Lynch, 40 NY3d at 13, 192 N.Y.S.3d 50, 213 N.E.3d 110, quoting Matter of Anonymous v. Molik, 32 NY3d 30, 37, 84 N.Y.S.3d 414, 109 N.E.3d 563 [2018]). All parts of the constitutional provision or statute " 'must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof' " (People v. Pabon, 28 NY3d 147, 152, 42 N.Y.S.3d 659, 65 N.E.3d 688 [2016], quoting McKinney's Cons. Laws of NY, Book 1, Statutes § 98[a]). Indeed, our well-settled doctrine requires us to give effect to each component of the provision or statute to avoid " 'a construction that treats a word or phrase as superfluous' " (Columbia Mem. Hosp. v. Hinds, 38 NY3d 253, 271, 172 N.Y.S.3d 649, 192 N.E.3d 1128 [2022], quoting Matter of Lemma v. Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528, 80 N.Y.S.3d 669, 105 N.E.3d 1250 [2018])." (Hoffmann v. New York State Indep. Redistricting Comm'n, — NY3d — No. 90, 2023 WL 8590407, at *7 [Dec. 12, 2023].)

Footnote 7:The Court agrees with the Majority Defendants' position that the issuance of the Attorney General opinion contemplated by Article XIX is not a condition precedent that must be satisfied prior to the Legislature acting upon the proposed amendment. The Legislature is free to act after the opinion is received or the twenty-day period has expired. However, the intent of the People in delineating the procedure outlined in the Article is to provide to the Legislature relevant information (deemed "very helpful" by the drafters) to assist them in their deliberative process. Article XIX compels the Attorney General to act in issuing the opinion, and compels the Legislature to wait for that opinion, unless the Attorney General disregards his or her duty to provide the opinion within twenty days. Only then is the Legislature free to act.

Footnote 8:It is true that the Legislature is free to act upon the proposed amendment regardless of what is contained in the Attorney General's opinion. But that fact is irrelevant. The People's intent under Article XIX is to aid in the deliberative process by requiring the Legislature to consider information provided by the Executive Branch as it considers adopting a proposed amendment, not to provide the Executive Branch the power to prevent it from acting.

Footnote 9:Additionally, it is clearly the intent of the People not to allow amendment to the Constitution except by an informed, deliberative process. The procedure requires not one vote of the Legislature, but two votes, with the second vote occurring after the next election for members of the assembly (". . . and referred to the next regular legislative session convening after the succeeding general election of members of the assembly"). The entire process is designed to take many months, and two informed votes of two Legislatures, and a vote by the electorate. Nothing about the process is "expedient". "There is little room for misapprehension as to the ends to be achieved by the safeguards surrounding the process of amendment. The integrity of the basic law is to be preserved against hasty or ill-considered changes, the fruit of ignorance or passion." (Browne v. City of New York, 241 NY 96, 109 [1925].)

Footnote 10:". . . shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, and the ayes and noes taken thereon, and referred to the next regular legislative session . . ." (§ 1 of Article XIX, emphasis supplied.)

Footnote 11:See also Campaign For Fiscal Equity, Inc. v. Marino, 87 NY2d 235, 238—39 (1995): "We hold that the practice of withholding from the Governor those bills on which both houses of the Legislature have formally acted is violative of article IV, § 7. To hold otherwise would be to sanction a practice where one house or one or two persons, as leaders of the Legislature, could nullify the express vote and will of the People's representatives. This requirement is constitutionally required and would not interfere with the usual and appropriate interaction of the executive and legislative branches in the making of laws."

Footnote 12:The Majority Defendants rely upon a treatise on the New York Constitution that states "[t]he legislature can also recall a proposed amendment by concurrent resolution if the attorney general finds it is inconsistent with other parts of the constitution". (Peter J. Galie & Christopher Bopst, The New York State Constitution 350 [2d ed 2012].) However, there is no constitutional language cited, statutory citation, or caselaw citation supporting this assertion and it appears it may be based upon the 1961 Attorney General Opinion.

Footnote 13:Additional language in the opinion supports the plaintiffs' position that the opinion of the Attorney General is important to the deliberative process undertaken by the Legislature in considering proposed amendments to the Constitution. Earlier in the opinion the Attorney General noted that the "obvious purpose is to preserve the integrity of the Constitution and to guard against inconsistencies that might result from its amendment." The Attorney General also noted that "[b]eyond peradventure the Legislature may act upon a proposed amendment after the expiration of the twenty day period without the opinion of the Attorney General perforce of the 1941 amendment." However, the Attorney General's opinion that it was permissible for the Legislature to act prior to the expiration of the prior to the receipt of the opinion within the twenty-day period, as noted above, is predicated upon the belief — now invalidated - that the Legislature could recall the concurrent resolution approving of the amendment. (1939 Atty. Gen. 358.)

Footnote 14:When questioned during oral argument on their summary judgment motion, able counsel for the Majority Defendants believed that the Attorney General would have standing, but no other person would until the amendment was approved and "as-applied" or "facial challenges" could then be brought. As to the claim that the Attorney General has standing, as noted by the Court of Appeals in Boryszewski v. Brydges (37 NY2d 361 [1975]):
 Moreover, it may even properly be thought that the responsibility of the Attorney-General and of other State officials is to uphold and effectively to support action taken by the legislative and executive branches of government. As Judge Fuld wrote generally in St. Clair (supra, 13 NY2d p. 79, 242 N.Y.S.2d p. 47, 192 N.E.2d p. 19) 'The suggestion * * * that the Attorney-General and other state officials may be relied upon to attack the constitutional validity of state legislation is both unreal in fact and dubious in theory'. His estimate of the situation has been verified in the years since St. Clair. (Id. at 364.)

 Footnote 15: See also Boryszewski v. Brydges, 37 NY2d 361, 364 [1975):
Where the prospect of challenge to the constitutionality of State legislation is otherwise effectually remote, it would be particularly repellant today, when every encouragement to the individual citizentaxpayer is to take an active, aggressive interest in his State as well as his local and national government, to continue to exclude him from access to the judicial process—since Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60, the classical means for effective scrutiny of legislative and executive action. The role of the judiciary is integral to the doctrine of separation of powers. It is unacceptable now by any process of continued quarantine to exclude the very persons most likely to invoke its powers.
Footnote 16:The Majority Defendants argue that the delay is either sixteen months (from initial passage of the Concurrent Resolution in July of 2022) or nine months (from the second passage of the Concurrent Resolution in January of 2023).

Footnote 17:To the extent the Majority Defendants argue that the plaintiffs' delay impermissibly prejudiced the Legislature from placing the proposed amendment on the ballot for the 2024 general election, this argument must fail. Had the plaintiffs initiated this action after the Concurrent Resolution first passed, assuming it was "ripe" (in July of 2022), invalidation of that Legislative action would have necessitated the process begin anew and it is not clear that the instant action would have been resolved in time to allow the Legislature to vote again on the Concurrent Resolution prior to the general election in November of 2022. The Majority Defendants have not met their burden in showing that they were prejudiced from placing the proposed amendment on the 2024 general election ballot, or that the failure for it to appear on that ballot constitutes sufficient prejudice to invoke the laches doctrine.

Footnote 18:Plaintiffs did not oppose this requested relief. "We note at the outset that plaintiff has abandoned the wrongful death cause of action, inasmuch as she failed to oppose that part of defendants' motion with respect to it and, indeed, has not addressed it on appeal (see Ciesinski v Town of Aurora, 202 AD2d 984 [1994])." (Donna Prince L. v. Waters, 48 AD3d 1137, 1138 [4th Dept. 2008].)

Footnote 19:Summons and Complaint, with exhibits (NYSCEF Docket #s 1-4); Notice of Motion (NYSCEF Docket # 10); Affirmation in Support with exhibits (NYSCEF Docket #s 11-15); Memorandum of Law in Support (NYSCEF Docket # 16); Affirmation in Support of Motion with exhibits (NYSCEF Docket #s 42-76); Affirmation in Reply (NYSCEF Docket # 77); Affirmation in Support (NYSCEF Docket # 79); Notice of Cross-Motion (NYSCEF Docket # 26); Affirmation in Support with exhibits (NYSCEF Docket #s 27-31); Affirmation in Opposition to Cross-Motion with exhibits (NYSCEF Docket # 32-37); Memorandum of Law in Opposition to Cross-Motion (NYSCEF Docket # 38); Affirmation in Reply (NYSCEF Docket # 40); Affirmation (NYSCEF Docket # 78).